44

## JOHN F. CARR, JR. *v.* TOWN OF BRIDGEWATER ET AL.
## (14149)

CALLAHAN, GLASS, BORDEN, BERDON and F. X. HENNESSY, Js.

Argued April 3—decision released October 30, 1992

*Ralph G. Elliot,* for the appellants (named defendant et al.).

*Neil F. Murphy, Jr.,* with whom were *Wesley W. Horton* and *Jeanne S. Roberts,* for the appellee (plaintiff).

*Everett Newton* and *Richard S. Emmett* filed a brief for the Conservation Law Foundation of New England, Inc., as amicus curiae.

BORDEN, J. The dispositive issue in this appeal is whether the plaintiff, John F. Carr, Jr., established that he had a constitutional entitlement to the zoning permit for which he had applied. The defendants, the town of Bridgewater, the Bridgewater planning and zoning commission (zoning commission), the Bridgewater conservation and inland wetlands commission (inland wetlands commission) and certain individuals,[1] appeal from the judgment of the trial court, *Moraghan, J.,* rendered after a jury verdict for compensatory and punitive damages in favor of the plaintiff. This appeal stems from the plaintiff's suit pursuant to 42 U.S.C. § 1983[2] for damages claiming that his civil rights were violated by the defendants' failure to issue him a zoning permit to construct a sixty unit "hotel" for residential housing

---

[1] Also named as defendants the following individuals: William Kinsolving, a member of the inland wetlands commission; Burton Bernstein, then chairman of the inland wetlands commission; Elliott Woolwich, then chairman of the zoning commission; and R. James Allen, then secretary of the zoning commission and a member of the inland wetlands commission. The defendants in this appeal will be referred to collectively as the "defendants."

[2] Title 42 of the United States Code, § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

for senior citizens. Although the complaint was framed in four counts,[3] the trial court permitted the jury to consider only the counts that alleged a violation of substantive due process and conspiracy.[4] We reverse and direct judgment in favor of the defendants.

The following facts are not in dispute. The plaintiff is the owner of a fifty acre parcel of land in Bridgewater, of which approximately one half is commercially zoned. On July 6, 1983, he informally presented to the zoning commission his idea of developing twenty-seven acres of the parcel for an "elderly hotel," which would consist of a restaurant and sixty units for housing senior citizens. Hotels, although not defined, were a permitted use in a commercial zone under § 2.2.3.1.g of the Bridgewater zoning regulations.[5] The commission was not receptive.

On September 20, 1983, a resident of Bridgewater petitioned the zoning commission to amend the regulations to delete § 2.2.3.1.g in order to eliminate hotels, among other things, as a permitted use in a commercial zone. On October 11, 1983, the plaintiff filed his application for a zoning permit together with a site plan for his "hotel." On October 24, 1983, the zoning commission held a hearing on the petition for the zoning amendment. Because the plaintiff had filed a valid protest against the proposed changes, the zoning commis-

---

[3] The trial court dismissed the counts that alleged violations of procedural due process and of antitrust laws, and those counts are not involved in this appeal.

[4] We need not discuss separately the defendants' claims regarding the conspiracy count because that count is also predicated on the issue of whether the plaintiff had a constitutional entitlement to the permit in question.

[5] Section 2.2.3.1.g of the Bridgewater zoning regulations set forth the following as permitted uses in a commercial zone: "Hotels, motels and restaurants, where food is served at tables within a building, including catering service as an accessory use, but specifically excluding food service to parking lots or outside service counters."

sion could only amend the regulations "by a vote of two-thirds of all the members of the commission." General Statutes § 8-3 (b).[6] Of the five members of the zoning commission, three members voted to amend the regulations by deleting § 2.2.3.1.g and two members abstained. The counsel for the zoning commission advised the members that the abstentions were to be counted as affirmative votes. In accordance with this advice, the zoning commission deemed that hotels were eliminated as a permitted use in a commercial zone and returned the plaintiff's application.

The plaintiff appealed to the Superior Court (the zoning appeal) on the ground that "two-thirds" of the zoning commission did not vote in favor of the amendment and, therefore, hotels continued to be a permitted use.[7] The plaintiff also filed in the Superior Court a mandamus action seeking an order directing the zoning commission to issue the permit for the hotel on the ground that its failure to act on the application within the time permitted under General Statutes §§ 8-3 (g) and 8-7d (b)[8] resulted in automatic approval of the permit.

[6] General Statutes § 8-3 (b) provides: "Such regulations and boundaries shall be established, changed or repealed only by a majority vote of all the members of the zoning commission, except as otherwise provided in this chapter. If a protest against a proposed change is filed at or before a hearing with the zoning commission, signed by the owners of twenty percent or more of the area of the lots included in such proposed change or of the lots within five hundred feet in all directions of the property included in the proposed change, such change shall not be adopted except by a vote of two-thirds of all the members of the commission."

[7] The plaintiff also appealed the zoning amendment to the Bridgewater zoning board of appeals (board). On March 19, 1984, the board sustained the plaintiff's appeal and ordered the zoning commission to process the plaintiff's application on the ground that, because the regulations were not amended, a hotel continued to be a permitted use. Upon advice of counsel, the zoning commission ignored the board's order and continued to refuse to process the plaintiff's application.

[8] General Statutes (Rev. to 1983) § 8-3 (g) provides in relevant part: "The zoning regulations may require that a site plan be filed with the commis-

On February 6, 1985, the Superior Court, *Pickett, J.,* decided both the zoning appeal and the mandamus action. In the zoning appeal, the court held that the zoning commission had not legally amended the regulations because abstentions could not be counted as affirmative votes and, therefore, the court sustained the plaintiff's appeal.[9] The defendants did not appeal the trial court's decision in the zoning appeal.[10]

---

sion or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. *A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired.* A decision to deny or modify a site plan shall set forth the reasons for such denial or modification." (Emphasis added.)

General Statutes § 8-7d (b) provides: "Whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for a proposed building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. The applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five-day periods, or may withdraw such plan."

[9] The plaintiff, on October 12, 1983, also submitted the same plans to the inland wetlands commission. At a meeting on April 18, 1984, the inland wetlands commission denied a permit to build the hotel complex by a vote of five to one. The plaintiff again appealed to the Superior Court. After a meeting in which the plaintiff and town officials attempted to resolve their differences, the plaintiff submitted a new application to the inland wetlands commission for permission to cross a stream with a road and to direct storm drainage into a stream. On September 5, 1984, the inland wetlands commission voted to deny the application. The plaintiff appealed this decision to the Superior Court and, on December 23, 1985, the court sustained the plaintiff's appeal. The inland wetlands commission, on April 9, 1986, issued a permit to the plaintiff for the stream crossing.

[10] On March 12, 1985, the zoning commission held another public hearing on whether to delete § 2.2.3.1.g of the Bridgewater zoning regulations. Again, the zoning commission voted to delete this section, from which vote the plaintiff appealed. Because of concern over improper notice of the

In the mandamus action, the trial court ordered the zoning commission to issue a certificate of approval for the plaintiff's application for a zoning permit because the zoning commission had failed to act on the application within the sixty-five day time period as required by § 8-3 (g).[11] The mandamus court rejected the defendants' claim that the statutory time period was tolled because the plaintiff had failed to submit, with his application, the town sanitarian's written approval of the sewage disposal facility in accordance with § 2.2.12.b of the zoning regulations.[12] The court construed the requirement of including a copy of the sewage facility permit to be "separate and distinct" from the application for the zoning permit. The mandamus court went on to state in its memorandum of decision: "The permit and site development plan submitted by the plaintiff conformed to the requirements of the regulations. The court finds that the defendants failed to act upon the plaintiff's application within sixty-five days and that therefore he is entitled to a writ of mandamus."

The zoning commission and its chairman, the defendant Elliott Woolwich, appealed from the judgment in the mandamus action to the Appellate Court. The Appellate Court, in *Carr* v. *Woolwich*, 7 Conn. App.

March 12, 1985 hearing, the zoning commission decided to hold another public hearing. Subsequently, the Superior Court upheld the second attempt by the zoning commission to delete this section and, in so doing, ruled moot the plaintiff's appeal from the third deletion attempt.

[11] The trial court also based its holding on General Statutes § 8-7d. The Appellate Court, however, ruled that the mandatory time constraints of § 8-7d did not control the plaintiff's application. *Carr* v. *Woolwich*, 7 Conn. App. 684, 700, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986).

[12] Section 2.2.12.b of the Bridgewater zoning regulations provides: "A copy of the permit to construct sewage disposal facilities shall accompany the application for a zoning permit.

"All proposed construction shall conform to the Zoning and Sanitary Regulations."

684, 700, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), viewing the site plan as inseparable from the application for the zoning permit, affirmed the trial court's grant of the writ of mandamus to issue the permit on the ground that the defendant had failed to act on the site plan in the time allotted by § 8-3 (g). Upon the denial of the defendants' petition for certification to this court; *Carr* v. *Woolwich,* 201 Conn. 804, 513 A.2d 698 (1986); the zoning commission promptly issued a permit to construct the "hotel" to the plaintiff.

The plaintiff then brought this § 1983 action for damages. Through interrogatories submitted by the trial court, *Moraghan, J.,* the jury found that each defendant had violated the plaintiff's constitutional right to substantive due process, and that all the defendants had entered into a conspiracy to deprive the plaintiff of his constitutional right to substantive due process. The jury returned a verdict for the plaintiff awarding $1.1 million in compensatory and punitive damages.[13] The trial court, upon denial of the defendants' motion to set aside the verdict, rendered a judgment on the verdict. This appeal followed.[14]

The defendants raise numerous claims that, they assert, require that the judgment of the trial court be reversed and that either judgment be directed in their

[13] The jury awarded the plaintiff the following: $300,000 compensatory damages from the town; $150,000 compensatory damages from the zoning commission; $150,000 compensatory damages from the inland wetlands commission; $100,000 compensatory damages and $50,000 punitive damages from Elliott Woolwich; $40,000 compensatory damages and $50,000 punitive damages from R. James Allen; $100,000 compensatory damages and $50,000 punitive damages from Burton Bernstein; and $60,000 compensatory damages and $50,000 punitive damages from William Kinsolving. The plaintiff's total jury award was $900,000 in compensatory damages and $200,000 in punitive damages.

[14] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

favor or a new trial be ordered. Because we conclude that the plaintiff failed to establish in his § 1983 action that he had a constitutional entitlement to the zoning permit, and because that conclusion is fatal to the plaintiff's causes of action, we need not address all of the defendants' claims.[15]

In *Red Maple Properties* v. *Zoning Commission,* 222 Conn. 730, 739, 610 A.2d 1238 (1992), we recently decided to follow the United States Court of Appeals for the Second Circuit and adopt the entitlement analysis developed in *Board of Regents* v. *Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), when presented with a § 1983 claim of a substantive due process violation in a land use case. Under this analysis, in order to have a protected property right, the applicant must have a " 'clear entitlement' to the approval he was seeking from the land use regulating body." *RRI Realty Corporation* v. *Incorporated Village of Southampton,* 870 F.2d 911, 915 (2d Cir.), cert. denied, 493 U.S. 893, 110 S. Ct. 240, 107 L. Ed. 2d 191 (1989) (*RRI*).

"In *Yale Auto Parts, Inc.* v. *Johnson,* 758 F.2d 54, 59 (2d Cir. 1985), the court determined that the plaintiff had a clear entitlement to a permit when, absent the alleged denial of due process, there is either a *certainty or a very strong likelihood* that the application would have been granted. (Emphasis added.) The court affirmed the dismissal of the plaintiff's claim of a protected property interest in the permit sought by [the

[15] The defendants claim that the trial court improperly: (1) instructed the jury regarding the plaintiff's constitutional entitlement to the zoning permit; (2) failed to identify the date on which to determine whether the plaintiff had such an entitlement; (3) instructed the jury regarding the issue of deprivation of such entitlement; (4) refused to set aside the verdicts against the inland wetlands commission and the town; (5) instructed the jury on the conspiracy count; and (6) instructed the jury regarding the doctrine of qualified immunity.

plaintiff] because the licensing authority responsible for the issuance of that permit had broad discretion to either grant or deny the permit. Basically, [the court's] focus is on the extent of the issuing agency's discretion to grant or deny the permit in question. *Natale* v. *Ridgefield*, 927 F.2d 101, 105 (2d Cir. 1991). The Second Circuit [Court of Appeals] has adhered to the property interest analysis, and *Yale Auto Parts* and its progeny have committed [the Second] Circuit to the entitlement inquiry in land use regulation cases. *RRI*, supra, 917–18." (Internal quotation marks omitted.) *Red Maple Properties* v. *Zoning Commission*, supra, 737–38.

In *Red Maple Properties*, we made clear that "[a]pplication of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not on the estimated probability that the authority will act favorably in a particular case. . . . *Yale Auto Parts* rejected the claim of a property interest in the permit being sought because of the discretion of the local regulating body. Even if, in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest. The strong likelihood aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised." (Internal quotation marks omitted.) *Red Maple Properties* v. *Zoning Commission*, supra, 739–40.

Moreover, as *RRI* makes clear, for purposes of determining whether there was a constitutional entitlement, the zoning authority's discretion must be measured at the time the application is filed, and the constitutional

entitlement that the applicant claims cannot be created by the passage of time. Thus, the court in *RRI* rejected the plaintiff's claims that the administrative agency "forfeited its discretion by not acting on the application within the statutory thirty-day period, and thus was required to approve the permit . . . . It may be that on the thirty-first day, [the plaintiff] was entitled to the permit, as a matter of state law, as the state court held. But [the plaintiff's] claim to the permit, as a matter of constitutional law, cannot be fragmented into two claims, one subject to the [administrative agency's] discretion within thirty days and one subject to a mandatory duty to issue after thirty days. For purposes of a property interest under the Due Process Clause, the claim to the permit is indivisible. The [administrative agency's] discretion to deny the permit during the thirty-day interval deprived [the plaintiff] of the property interest in the permit, regardless of how unlawful under state law the ultimate denial may have been." *RRI,* supra, 919.[16]

---

[16] We therefore reject the plaintiff's claim, which the trial court endorsed in this case, that his constitutional entitlement was created by the zoning commission's failure to act on his application within the statutory sixty-five day period. Whether he had a constitutional entitlement must be determined at the time he filed his application, and the legal effect of the subsequent passage of time cannot affect that analysis.

We also reject the plaintiff's reliance, which the trial court in this case also endorsed, on the statement of the mandamus court, *Pickett, J.,* that the "permit and site development plan submitted by [Carr] conformed to the requirements of the regulations." To the extent that the trial court in this case relied on that statement to support a determination that the plaintiff was constitutionally entitled to the permit, that reliance was misplaced. The sole issue in the mandamus action was whether the permit should have been issued because of the passage of time, and that was the sole issue before the Appellate Court in *Carr* v. *Woolwich,* 7 Conn. App. 684, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986). Indeed, the point of the mandamus action was that the plaintiff was entitled to the permit by virtue of the passage of time, regardless of whether his application complied with the regulations. See id. The mandamus court had no legitimate occasion to compare the application with the regulations. Thus, that statement

Finally, as we pointed out in *Red Maple Properties* v. *Zoning Commission,* supra, 740, because the "focus of the inquiry is on the degree of discretion of the authority, the question of whether an applicant has a property interest is normally a matter of law for the trial court." Furthermore, this determination is subject to our de novo review on appeal. Id.

With this background in mind, we turn to the degree of discretion of the zoning commission regarding the plaintiff's application and site plan at the time they were filed with that commission. See *Carr* v. *Woolwich,* supra, 7 Conn. App. 700 (the plaintiff's application and site plan considered as one document). The plaintiff's application was for a "hotel," a permitted use under § 2.2.3.1.g of the zoning regulations. See footnote 5. Section 2.2.12.a of the regulations required the plaintiff to submit a site plan together with his application for a hotel.[17] In reviewing the plaintiff's appli-

was dictum, and could not form the basis of the plaintiff's claim of constitutional entitlement.

The plaintiff also argues that because the jury found, through interrogatories, that the defendants' conduct was "arbitrary and capricious," we should conclude that his constitutional rights were violated. In *Red Maple Properties* v. *Zoning Commission,* 222 Conn. 730, 738, 610 A.2d 1238 (1992), which was decided after oral argument in this case, we recognized that some Circuit Courts of Appeals "assumed that the pertinent property interest is the property the plaintiff owns and simply examined whether the action of local regulators in denying an application for the proposed use of the land was arbitrary and capricious . . . ." (Internal quotation marks omitted.) We went on, however, specifically to reject that approach and opted instead to follow the Second Circuit Court of Appeals' "entitlement test." Id., 739.

[17] Section 2.2.12.a of the Bridgewater zoning regulations provides: "Before any new building or structure shall be started, or existing buildings altered, a sketch or plans of the proposed work shall be filed with the Commission, not less than one week before a regular meeting, together with an application for [a] permit, and no work shall be done on the building until the Commission shall have given its written approval. The sketch or plans submitted should show the specific address and location, the plot plan, the driveway entrance, the location of existing and proposed buildings on the site, the location of the water supply and sewage disposal system."

cation and site plan, "the commission act[ed] in an administrative capacity. *Goldberg* v. *Zoning Commission,* 173 Conn. 23, 29, 376 A.2d 385 (1977). Furthermore, in reviewing [the plaintiff's] site [plan] the commission [had] no independent discretion beyond determining whether the plan complie[d] with the applicable regulations . . . [and] [was] under a mandate to apply the requirements of the regulations as written. *Allied Plywood, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984); *Kosinski* v. *Lawlor,* [177 Conn. 420, 427, 418 A.2d 66 (1979)]." (Internal quotation marks omitted.) *Norwich* v. *Norwalk Wilbert Vault Co.,* 208 Conn. 1, 12–13, 544 A.2d 152 (1988).

In this case, therefore, the question of whether the plaintiff had a constitutional entitlement to the zoning permit he sought, at the time he filed his application and site plan with the zoning commission, turns on the question of whether his application and site plan complied with the applicable regulations.[18] If they did comply with those regulations, the zoning commission had no discretion to deny his application, and he had a constitutional entitlement to the permit because there was a certainty that, absent the alleged denial of due pro-

---

[18] We recognize, of course, that in some cases the *RRI Realty Corporation* and *Red Maple Properties* entitlement inquiry will focus on the language of the regulations, that is, whether the regulations themselves give a degree of discretion to the zoning authority sufficient to defeat a constitutional entitlement. Indeed, that was the case in *Red Maple Properties* itself, where the regulations required the applicant to satisfy discretionary design review requirements. *Red Maple Properties* v. *Zoning Commission,* 222 Conn. 730, 740–42, 610 A.2d 1238 (1992). In other cases, the inquiry may focus on both the regulations and the applicant's compliance therewith. See, e.g., *RRI Realty Corporation* v. *Incorporated Village of Southampton,* 870 F.2d 911, 918–19 (2d Cir.), cert. denied, 493 U.S. 893, 110 S. Ct. 240, 107 L. Ed. 2d 191 (1989). In this case, however, because the regulations import no degree of discretion apart from the issue of the applicant's compliance therewith, that compliance is the only relevant focus of the constitutional entitlement inquiry.

cess, the application would have been granted. *Red Maple Properties* v. *Zoning Commission,* supra; see *Sullivan* v. *Salem,* 805 F.2d 81, 85 (2d Cir. 1986) (if houses for which the plaintiff sought certificates of occupancy complied with applicable requirements, no discretion in building official to deny certificates, and the plaintiff constitutionally entitled thereto). If, however, his application and site plan did not comply with those regulations, the zoning commission was entitled to deny the application, and there was neither a certainty nor a very strong likelihood that the application would have been granted. Thus, the plaintiff would have no constitutional entitlement.[19] We conclude that the plaintiff had no constitutional entitlement to the zoning permit that he sought because, although the plaintiff in his application and site plan labeled the building he sought to construct as a "hotel," the record in this case makes unmistakably clear that the application was not for a hotel but was, in fact, for long term, permanent elderly housing and, therefore, his application did not comply with § 2.2.3.1.g of the zoning regulations.[20]

"Hotel" is not defined in the regulations. See footnote 5. Accordingly, we look to its ordinary meaning and conclude that the plaintiff's project does not fall therein. Absent a technical meaning or the use of a term of art, or except where the context requires otherwise, "[w]ords used in statutes and regulations

[19] After oral argument, we ordered the parties to file simultaneous supplemental briefs on the following issue: "Based upon the evidence produced at trial, including the testimony of the plaintiff regarding the nature of the facility he sought to build, did the plaintiff's application and site plan comply with the applicable regulations?"

[20] This conclusion renders it unnecessary to consider the defendants' additional argument that the plaintiff's application and site plan failed to comply with other provisions of the applicable regulations regarding a sewage disposal certificate, maximum height of the proposed structure, location of water supply, landscaping schedule and detail, parking area detail, and restaurant loading area.

are to be construed according to their commonly approved usage." (Internal quotation marks omitted.) *Westport* v. *Norwalk,* 167 Conn. 151, 163, 355 A.2d 25 (1974); see General Statutes § 1-1 (a).

In ordinary parlance, "hotel" means "a building of many rooms chiefly for overnight accommodation of *transients* . . . ." (Emphasis added.) Webster's Third New International Dictionary; see also *Bourque* v. *Morris,* 190 Conn. 364, 368, 460 A.2d 1251 (1983) ("[t]o be a guest of an inn or hotel it is essential that the person should be a transient"); Black's Law Dictionary (6th Ed.) ("[a] building held out to the public as a place where all transient persons who come will be received . . ."); 40 Am. Jur. 2d § 2 ("a house which is held out to the public . . . as a place where transient persons . . . will be received and entertained as guests for compensation"); 40 Am. Jur. 2d § 14 ("a guest is one who is a transient, that is free to go and come as he pleases, and who does not sojourn in the inn for a specified time or permanently"); 28 A.L.R.3d 1243 (transitory nature of patronage is distinguishing characteristic of a hotel).

The conclusion that the plaintiff's proposed elderly housing did not come within the meaning of "hotel" as used in § 2.2.3.1 of the zoning regulations is reinforced by a reading of the entire section of the regulation. "In construing a zoning regulation, it is our primary goal to ascertain and give effect to the intent of the local legislative body as expressed in the regulation as a whole." *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 601, 539 A.2d 101 (1988).

Section 2.2.3.1.a makes clear that only transient lodging was intended in a commercial zone. Subsection (a) provides that only preexisting residential uses are allowed and that "there shall be no increases in the present number of dwelling units." Subsection (b) of this section authorizes "[p]rofessional and business

offices, financial institutions, medical and dental offices and clinics not designed for overnight patients." Subsections (c), (d), (e), (f), (h) and (j) allow a variety of retail businesses, stores and services, none of which involve any type of lodging. Under subsection (i), a veterinarian animal hospital is permitted, but only if it excludes "boarding of healthy animals." Finally, the close linkage in the regulation between "hotels" and "motels and restaurants" further suggests the transient nature of the permitted uses under the regulation. Read as a whole, the regulations permit the transitory housing of guests at a hotel, but do not anticipate long term housing of any sort, aside from existing residential uses.

A review of the plaintiff's application and site plan are not revealing. The application contained only the conclusory statement that a sixty unit "hotel" was proposed. Likewise, the site plan merely illustrated the proposed "hotel." The admissions by the plaintiff in his letter to Bridgewater senior citizens, which was admitted as an exhibit during his testimony, however, reveal that what was labeled as a hotel was in fact elderly housing. In the letter dated June 17, 1983, the plaintiff asked Bridgewater senior citizens: "As part of a private program to develop senior citizen housing . . . we are conducting a survey of town senior citizens to determine what type and variety of housing and services are desired and needed." During cross-examination at trial, the plaintiff described his hotel as a "place . . . where people lived." He also acknowledged that "[t]he intention was not that [the residents] would be transients" but that they would be "permanent residents." The only reasonable conclusion to be drawn from this record is that the plaintiff's application was in fact not for a "hotel" within the meaning of the applicable zoning regulation, because it specifically did not contemplate use by transients. Rather, the application was for permanent, long term elderly housing. This con-

clusion is fatal to the plaintiff's claim of a constitutional entitlement to the zoning permit that he sought, and to his causes of action in this case.

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion CALLAHAN, GLASS and F. X. HEN-NESSY, Js., concurred.

BERDON, J., concurring. I concur in the result, but write separately to stress the analytical framework that should be used for deciding whether there is a constitutional entitlement.

In *Red Maple Properties* v. *Zoning Commission,* 222 Conn. 730, 610 A.2d 1238 (1992), our inquiry as to whether there was a constitutional entitlement necessarily stopped when we determined that the zoning commission in that case was vested with broad discretion to grant or deny the permit application under the statute and regulations.[1] In cases such as this, however, there is a second element that must be satisfied before a constitutional entitlement can exist—that is, whether the plaintiff-applicant has fulfilled the requirements of the regulations. "In *Littlefield* v. *City of Afton,* 785 F.2d 596, 602 (8th Cir. 1986), the Eighth Circuit [Court of Appeals] held that state law creates a constitutionally protected property interest in a building permit if (1) the municipality lacks discretion and must issue a building permit to an applicant who complies with the statutory requirements *and,* (2) the applicant has ful-

---

[1] In *RRI Realty Corporation* v. *Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.), cert. denied, 493 U.S. 893, 110 S. Ct. 240, 107 L. Ed. 2d 191 (1989) (*RRI*), the court in its analysis also stopped with the regulation which conferred on the regulatory agency a broad discretion. The agency in *RRI* was "charged with the duty of exercising sound judgment and of rejecting plans which, in its opinion, are not of harmonious character because of the proposed style, materials, mass, line, color. . . . " (Internal quotation marks omitted.) Id., 919.

filled the requirements. Accord *Carolan* v. *City of Kansas City,* 813 F.2d 178, 181 (8th Cir. 1987) (noting that both conditions must be met before a constitutionally protected property interest in a building permit arises)." (Emphasis in original.) *Spence* v. *Zimmerman,* 873 F.2d 256, 258 (11th Cir. 1989).

The requirement that the application comply with the regulations is underscored in *Sullivan* v. *Salem,* 805 F.2d 81 (2d Cir. 1986). The trial court, in *Sullivan,* granted summary judgment in favor of the defendant in a § 1983 action on the issue of whether the plaintiff had a constitutional entitlement to a certificate of occupancy. The trial court reasoned that because "the building official was required to exercise discretion in determining whether or not to issue a certificate of occupancy . . . [the plaintiff] could not have had a legitimate claim of entitlement to the certificates. Therefore, according to the [trial] court, with no property interest in the certificates, [the] plaintiff had no claim under the due process clause even if the refusal to issue the certificates of occupancy was in clear violation of state law." Id., 84. The Second Circuit Court of Appeals reversed the trial court and held that if "the houses complied with the applicable state and municipal requirements, there was no element of discretion or judgment remaining for the building official to exercise in determining whether to issue the certificates." Id., 85. The court then remanded the case for further proceedings to determine "whether in fact the houses did meet all applicable requirements and whether the certificates of occupancy were refused solely [on an unlawful basis]." Id.

In sum, for there to be a constitutional entitlement to a property interest under a § 1983 action in a land use case there must be a determination that: (1) under the statute or other regulations, the agency either had no discretion to deny the permit or had such limited

discretion that there would have been, "absent the alleged denial of due process . . . a very strong likelihood that the [permit] would have been granted"; *Yale Auto Parts, Inc.* v. *Johnson,* 758 F.2d 54, 59 (2d Cir. 1985); and (2) the application for the permit must conform to the requirements of the regulations. It is clear that the constitutional entitlement claimed by the plaintiff fails because his application for the zoning permit did not conform to the regulations, which permitted a hotel for transients but did not permit elderly housing. The plaintiff's failure to establish such an entitlement is fatal to his cause of action.

We depend heavily upon citizen participation in state and town boards and commissions. This is particularly true in the regulation of land use, which is of the utmost importance not only for a town's orderly development, but also for the protection of our environment. Our legislature has delegated this regulation to the towns. E.g., General Statutes §§ 8-1 and 8-2. The amicus curiae brief of the Conservation Law Foundation of New England, Inc., appropriately notes the following: "This important regulatory function is performed by members of local commissions, elected or appointed, who serve without compensation. They receive little or no formal training, legal or otherwise; and unlike many who appear before them, they are not supported by any full-time professional staff. They have to make innumerable on-the-spot decisions, procedural and substantive, that may have significant legal effects; but in many cases their only source of legal advice is a part-time town attorney, otherwise engaged in private practice, who generally is available for consultation only before or after the fact." At the same time, I am concerned with the rights of property owners, such as the plaintiff, and their right to develop their property in a manner permitted by the regulations.

I believe that our adoption of the entitlement approach to determine damages for substantive due process violations in land use cases under § 1983, together with the protection of individual town commissioners under the doctrine of qualified immunity,[2] strikes an appropriate balance between protecting the interests of the public and those of private property owners to develop their land in a manner which is consistent with valid government regulations.

In this case, the conduct of the individual defendants as found by the jury in the processing of the plaintiff's project was arbitrary and capricious and should not be condoned. Nevertheless, such conduct on the part of the individual defendants becomes relevant to the issue of damages only after the plaintiff has proven a clear entitlement to the permit.

---

[2] The Supreme Court of the United States in *Harlow* v. *Fitzgerald,* 457 U.S. 800, 813–14, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), noted the problem of balancing the appropriate interests between these sometimes competing forces as follows: "The resolution of immunity questions inherently requires a balance between the evils inevitable in any available alternative. In situations of abuse of office, an action for damages may offer the only realistic avenue for vindications of constitutional guarantees. . . . It is this recognition that has required the denial of absolute immunity to most public officers. At the same time, however, it cannot be disputed seriously that claims frequently run against the innocent as well as the guilty—at a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." (Citations omitted; internal quotation marks omitted.)