[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Konover Development Corporation (Konover) and Straits Commercial Associates Limited Partnership (Straits), appeal pursuant to General Statutes § 8-8 from a decision of the defendant, the Planning and Zoning Commission of the Town of Watertown (Commission), denying Konover's site plan application for a retail development located on Straits Turnpike in Watertown. Matthew M. Rubin, Trustee, is also named as a defendant in this appeal.
In April, 1995, the Commission approved a site plan application submitted by Konover for the construction of a retail center containing a K-Mart store. (Appeal, ¶ 7; Answer, ¶ 7.) The affected parcel of property is located in the "Shopping Center Business District" (B-SC) under the Zoning Regulations of the Town of Watertown (the regulations), and the retail use involved is a permitted use subject to site plan approval. (Appeal, ¶ 4, 5; Answer, ¶ 4, 5.) The Watertown Conservation Commission/Inland Wetlands Agency (Agency) approved a permit for Konover to engage in regulated activities pertaining to the retail construction project. (Appeal, ¶ 8; Answer, ¶ 8.) CT Page 11337
Subsequently, Konover submitted an application for site plan approval for the construction of a Super Stop Shop supermarket and other retail activities. (Return of Record [ROR], Exh. A, Item 1.) In 1997, the Agency granted a modification of Konover's permit, which pertained to the construction of the Stop Shop supermarket. (Appeal, ¶ 10; Answer, ¶ 10.) The Commission held several hearings on the application for site plan approval in 1996 and 1997; (ROR, Exh. B.); before denying the application at the February 19, 1997 meeting by a vote of 5-1. (Appeal, ¶ 14; ROP. Exh. B.) Publication of the decision was made in theTown Times on February 27, 1997.
General Statutes § 8-8 governs appeals taken from zoning board decisions to the Superior Court. "Appeals to courts from administrative agencies exist only under statutory authority . . . A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal. (Citations omitted.) Office of Consumer Counsel v. Dept. of Public UtilityControl, 234 Conn. 624, 640, 662 A.2d 1251 (1995)
Aggrievement may be either classical or statutory. For statutory aggrievement, in order "[t]o appeal an administrative decision, the plaintiff must be aggrieved by the decision. In the case of a decision by a zoning commission . . . aggrieved person includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board . . ." (Citations omitted; internal quotation marks omitted.) Northeast Parking v. Planning ZoningCommission of Windsor Locks, 47 Conn. App. 284, 287, 703 A.2d 797
(1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). In order to allege classical aggrievement, a plaintiff must demonstrate a "specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . ." (Citations omitted.) Id. "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. . . ." (Citations omitted.) Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996) CT Page 11338
In the present case, Konover alleges aggrievement insofar as it "was and is the holder of the K-Mart application approval and the applicant to the Commission in this proceeding." (Appeal, ¶ 22) The court finds that Konover is aggrieved because it can establish a specific personal interest in the application.
The plaintiff Straits alleges aggrievement as the owner of the property that is the subject of the appeal. (Appeal, ¶ 23.) The court finds that the plaintiff Straits is therefore statutorily aggrieved under General Statutes § 8-8 (a)(1) as the owner of the parcel of property at issue.
General Statutes § 8-8 provides in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) provides that service must be made upon the chairman or clerk of the board, and upon the clerk of the municipality. General Statutes § 8-8 (e).
The Commission reached a decision on the application at its. meeting held on February 19, 1997. (ROR Exh. B.) The decision was published in the Town Times on February 27, 1997. (ROR Exh. H.) The plaintiffs commenced this appeal by serving the town clerk for the Town of Watertown, the chairman of the Planning and Zoning Commission of the Town of Watertown, and Matthew M. Rubin, Trustee. The Town and the Commission were served on March 13, 1999, and Rubin was served on March 14, 1999. (Sheriff's Return, dated March 13, 1997.) Thus, the parties were timely served under the statute.
"A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations." General Statutes § 8-3 (g). If the application is denied by the commission, General Statutes § 8-3
(g) requires the commission to state the reasons for the denial. See General Statutes § 8-3 (g). The question for the reviewing court is whether "the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. . . . While the court may not substitute its judgment for that of the commission, if it concludes that any one of several reasons . . . is reasonably supported by the record, then the commission's actions must stand . . . (Citation omitted; internal quotation marks omitted.) Friedman v. PlanningCT Page 11339 Zoning Commission, 222 Conn. 262, 268, 608 A.2d 1178 (1992)
"The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." Primerica v.Planning Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646
(1989). Superior Court review of zoning commission decisions is therefore limited to whether the commission acted arbitrarily, illegally, or unreasonably. WNUK v. Zoning Board of Appeals,225 Conn. 691, 695, 626 A.2d 698 (1993). "The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved. . . ." (Citations omitted) Cybulski v. Planning Zoning Commission,43 Conn. App. 105, 111, 682 A.2d 1073, cert. denied, 239 Conn. 949,686 A.2d 123 (1996)
"A site plan is a plan filed with a zoning commission or other municipal agency or official to determine the conformity of a proposed building, use or structure with specific provisions of the zoning regulations. It is a physical plan showing the layout and design of a proposed use, including structures, parking areas and open space and their relation to adjacent uses and roads, and containing the information required by the zoning regulations for that use. The agency has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations. . . ." (Citations omitted; internal quotation marks omitted.) Connecticut Resources Recovery Authority v. Planning Zoning Commission, 46 Conn. App. 566, 570, 700 A.2d 67, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997). "In reviewing and approving site plans the commission acts in an administrative capacity. . . ." Norwich v. Norwalk Wilbert Vault Co.,208 Conn. 1, 12, 544 A.2d 152 (1988); see also Carr v. Bridgewater,224 Conn. 44, 54, 616 A.2d 257 (1992)
The plaintiffs appeal on numerous grounds. They contend that (1) the action of the commission was illegal, arbitrary, and an abuse of discretion because the reasons stated by the Commission in denying the application were insufficient; (2) that the Commission could not consider off-site traffic even though the applicant provided information pertaining to roadway improvements and traffic volume; (3) that Section 51.10.4 of the Regulations is impermissibly vague because it fails to identify specific CT Page 11340 safety improvements and where such improvements are necessary; (4) and that Section 51.12 is facially invalid and impermissibly vague as applied to the application.
A. Offsite Traffic
The plaintiffs contend that the first two reasons for the denial of the application were improperly based upon offsite traffic considerations.[1] Our Supreme Court has held that offsite traffic may not be considered by a commission when the pertinent regulations do not refer to offsite traffic. TLCDevelopment, Inc. v. Planning Zoning Commission, 215 Conn. 527,577 A.2d 288 (1990). However, "[i]n a permitted use zone, although a presumption arises that the permitted use does not adversely affect traffic within the zone, an examination into special traffic consequences of a given site [is permissible] when the applicable zoning regulations permit it." BarberinoRealty Development v. Zoning Commission, 222 Conn. 607, 616,610 A.2d 1205 (1992), quoting Friedman v. Planning ZoningCommission, 222 Conn. 262, 266, 608 A.2d 1178 (1992). "There is a difference between considering the special traffic consequences of development under a particular site plan when the applicable zoning regulations permit it, to be certain that the location of exits and entrances to the property to [sic] do not adversely affect traffic flow, in contrast with attempting to deny a permitted use because of existing off-site traffic volumes and patterns." P. Fuller, 9 Connecticut Practice Series, Land Use Law and Practice (1998 Pocket Part) § 49.14, p. 160.
In the present case, the plaintiffs argue that the Commission is not authorized to deny a site plan application based on offsite traffic considerations unless such considerations are expressly provided for in the town zoning regulations, and that the regulations in this case do not list offsite traffic considerations as possible criteria in applications for site plan approval. (Plaintiffs' Brief, dated August 24, 1998, pp. 8, 10.) Further, the plaintiffs contrast the requirements for a site plan with those for a special permit to demonstrate that the zoning regulations refer to traffic impacts in certain places, and the town would have included traffic impact considerations in the regulations for site plan approval if necessary. (Plaintiffs' Brief, dated August 24, 1998, pp. 9-10.)
In response, the defendant argues that the plaintiffs "voluntarily submitted plans for off-site improvements along CT Page 11341 Straits Turnpike and at the intersection of Straits Turnpike and Bunker Hill Road" and that consequently the Commission was entitled to consider that information, and could reasonably deny the application based on offsite traffic considerations. (Defendant's Brief, dated October 26, 1998, pp. 14-17.)
Article V, Section 51 of the Watertown regulations governs site plan approval. For site plan approval in general, Section 51.4.1 states that "[f]ailure to comply with the application submission requirements . . . shall be grounds for the Commission to deny [the] application." (ROR Exh. 1, p. 85.) Additionally, the Commission may attach such conditions as it deems necessary to protect the public health, safety and welfare. (ROR Exh. 1, § 51.11, p. 89.)
The Watertown regulations contain references to traffic. Section 51.6.5 states that each site plan must include "Lain estimate of the amount and type of vehicular traffic to be generated on a daily basis and at peak hours. The Commission may require a Traffic Study evaluating the impact of the proposal on streets serving and/or affected by the development. (ROR Exh. 1, p. 86; see also ROR Exh. 1, § 51.20(d).) The regulations list ten standards to be employed by the Commission. (ROR Exh. 1, § 51.10.) The only standard that mentions traffic is § 51.10.3, which states that the Commission would consider "the adequacy of design of the interior vehicular circulation system, to provide safe and convenient access to all structures, uses, parking spaces and loading spaces." (ROP. Exh. 1, p. 88.)
In TLC Development, Inc. v. Planning Zoning Commission, supra, 215 Conn. 527, the Supreme Court determined that the Branford Planning Zoning Commission improperly denied an application for site plan approval due to offsite traffic because the Branford regulations did not list offsite traffic considerations as requisite criteria for approval. Two years later, in Friedman v. Planning Zoning Commission, supra,222 Conn. 262, the court considered whether the commission could consider offsite traffic in an application for site plan approval of a permitted use and held that a commission may inquire as to traffic consequences of a site plan when the zoning regulations permit them to do so, even in permitted use areas.
The record demonstrates that the commission was concerned with traffic generation and circulation. The town regulations require traffic generation information of all applicants, and CT Page 11342 applicants are informed by the regulations that the commission may require a traffic study "evaluating the impact of the proposal on streets serving and/or affected by the development. . . . (ROR Exh. 1, § 51.6.5.) In the present case, the proposed development is in close proximity to Route 63, which is heavily traveled. The plaintiff provided the Commission with a proposal which included "installation of a traffic signal at the intersection of [Route] 63, New Wood Road and the site drive. It also includes lane widening and signal improvements at the intersection of [Route] 63 and Bunker Hill Road, as well as coordinating traffic lights along [Route] 63." (ROR Exh. B, 2/19/97 minutes, p. 3.) Thus, the plaintiff proposed improvements to the area in order to maintain acceptable levels of service and provide for safe conditions. The plaintiff engaged in discussions with the commission regarding the improvements and the resultant traffic conditions along Route 63.
The Commission was entitled to review and consider the off-site traffic information because the plaintiff presented this traffic and improvements information to the Commission as part of the site plan application, the regulations provide notice that traffic is a factor for consideration, and traffic was one of the major topics discussed throughout consideration of this application.
The first reason for the denial refers to a peer review of the plaintiffs traffic report, and the potential accident rate on adjacent roadways. The Commission hired a third party, Wilbur Smith Associates (Wilbur Smith), to conduct an independent review of the traffic information provided by the plaintiffs. The Wilbur Smith report states, "[b]ased on the level of total peak traffic, and the number of driveways, Levels of Service B may not be reached along the Straits Turnpike roadway section between the Bunker Hill Road and Site Drive intersections." (ROR Exh. C, Item L 2, p. 6.) A letter to the State Traffic Commission reveals that the project may not be able to maintain a Level of Service B at all times: "The . . . plans indicate the widening which is necessary along Route 63. With these proposed improvements, the overall level of service at the intersection [of Route 63 and Bunker Hill Road] is anticipated to be — B and C during the p. m. and Saturday peak hours respectively. All other improvements . . . should be adequate to accommodate the additional generated traffic." (ROR Exh. C, Letter from Hesketh 
Associates to State Traffic Commission, dated September 17, 1996, p. 3.) Thus, there is a reasonable basis by which the Commission CT Page 11343 could conclude that Levels of Service B may not be reached at all times.
As to the potential for accidents, in the public participation portion of a regular meeting held on February 5, 1997, one participant stated, "there are a significant number of driveways between the Bunker Hill intersection and the New Wood Road intersection. Currently, there is already a substantial problem if one crosses the lane and makes a left turn in whatever direction, whether one goes north or south. There is even more concern that if this facility is improved, that would be extremely hazardous." (ROR Exh. B, 2/5/97 minutes, p. 1.) The plaintiffs conducted a review of accident data due to questions from Wilbur Smith Associates and maintain that there will be no negative impact in the area in terms of accident potential; (ROR Exh. C, letter from Hesketh Associates to Kathleen Rose, dated February 19, 1997, pp. 1-2.); however members of the commission were seeking assurances that the project would not result in an increase in accidents. During the February 19, 1997 special meeting, Commissioner Blais inquired about rear end accidents along Route 63. (ROR Exh. B, 2/19/97 minutes, pp. 3-4.) Commissioner Wick inquired whether the benefit of signalization will be canceled by the increase in the total number of vehicles. (ROR Exh. B, 2/19/97 minutes, p. 4.) The plaintiff's representative, Ms. Mintz, stated that "there is, unfortunately, no way to extrapolate" from the facts provided. (ROR Exh. B, 2/19/97 minutes, p. 4.) She continued, "[t]here is not a statistical scientific way to take an existing traffic condition and an existing accident history, make changes to the corridor, add traffic, and get your new accident frequency." (ROR Exh. B, 2/19/97 minutes, p. 5.) Commissioner Adams then noted that Ms. Mintz could not provide documentation regarding similar intersections with similar improvements and an overall reduction of accidents. (ROR Exh. B, 2/19/97 minutes, p. 5.) Additionally, during the hearing there was discussion on queuing and the potential for accidents at the intersection of Davis Street and Route 63. Thus, the record reveals a basis by which the Commission could find it difficult to assess potential accidents at the intersection of Davis Street and Route 63, as stated in the first reason for the denial of the application.
B. Vagueness
"It is well established that, as a general rule, the constitutionality of a statutory provision being attacked as void CT Page 11344 for vagueness is determined by the statute's applicability to the particular facts at issue. . . ." (Citations omitted; internal quotation marks omitted.) Spero v. Zoning Board of Appeals,217 Conn. 435, 446, 586 A.2d 590 (1991). The plaintiff carries the burden of proving that the regulations are "impermissibly vague as applied to the facts" of the case. Felsman v. ZoningCommission, 31 Conn. App. 674, 681, 626 A.2d 825 (1993). "The standard for determining the adequacy of subdivision regulations is whether they are reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. . . ." Smith v. Zoning Board of Appeals,227 Conn. 71, 93, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164 (1994)
The plaintiffs argue that the Commission's third reason for the denial of the application was improper because § 51.10.4 of the Watertown regulation[2] is impermissibly vague as to what satisfies the requirement of "safe pedestrian movement" and as to where such areas must be located.[3] (Plaintiffs' Brief, dated August 24, 1998, p. 20.) Further, the plaintiffs argue, the record does not support the Commission's third reason for the decision and it is therefore illegal, arbitrary and an abuse of discretion. (Plaintiffs' Brief, dated August 24, 1998, p. 22.)
The plaintiff did not demonstrate that the pertinent language of the regulation, "within and adjacent to the site," was unascertainable. In fact, the plaintiff provided the commission with proposals pertaining to sidewalks in and around the store, however it failed to adequately address the concerns of the commission regarding sidewalks for safe pedestrian movement adjacent to the site. As part of this application the plaintiff proposed various improvements to the area such as lane widening and signalization, however the plaintiff failed to incorporate a proposal for sidewalks adjacent to the site along with those improvements.
The record reveals that the topic was addressed on two occasions. During the November 6, 1996 meeting "[Commissioner] Blais asked about the people who wish to walk through the intersection. Ms. Mintz . . . replied that the intersection will have a pedestrian phase. . . . [Commissioner] Adams asked if they will be putting sidewalks in all those improvement areas. Ms. Mintz said that as a starting point, they will be replacing whatever is there today. Mr. Adams said that nothing is there CT Page 11345 today. Ms. Mintz replied that right now, it is not proposed. Mr. Adams continued by stating that with the increased traffic,several elderly persons actually walk to either McDonald's orK-Mart . . . and if there are no sidewalks, with the increasedtraffic, he is certain that it would pose a problem." (Emphasis added.) (ROR, Exh. B, 11/6/96 minutes, p. 31.) During a subsequent meeting, in the context of the discussion about widening Route 63 at the intersection of Bunker Hill Road, Commissioner Wick asked about sidewalks and was informed that there was "no change" in the plans. CROP. Exh. B, 2/5/97 minutes, p. 41.) Thus, while the plaintiff had proposals for sidewalks within the site, and for improvements in the area adjacent to the site, it did not produce a proposal for sidewalks adjacent to the site. Despite such brief attention by the Commission, the concerns of Mr. Blais and Mr. Adams are on the record and support the third reason for the Commission's decision.
C. Environmental Features
As to the fourth reason[4] for the decision, the plaintiffs argue that § 51.12[5] is impermissibly vague by its terms; and as applied to this case. They aver that the section does not indicate what is to be used as evaluation criteria or that noncompliance could result in denial of the site plan application. Further, they argue that the decision is not supported by substantial evidence because environmental consultants concluded that the area does not contain the environmental features that the regulation seeks to protect.
The plaintiff has not demonstrated that the regulation is impermissibly vague. Moreover, the record contains data which could support the fourth reason for the decision. Dr. Dimmick, a geologist, informed the commission that the blasting would require a mimimum of 5,000 truckloads of material to be removed from the site. CROP. Exh. B, 12/4/96 minutes, p. 5.) He also informed the commission that "[t]he rock will need to be drilled and blasted, it is very difficult, it cannot be ripped — it is very high quality stone . . . it has the same properties as granite. . . . To blast that amount of rock . . . that would give them a minimum of about 120 days to cycle the drilling and blasting to remove the removal. . . ." (ROR Exh. B, 12/4/96 minutes, p. 5.) A letter from nearby residents expressed concerns with the blasting plans: "we are still very concerned about the impact of the blasting during construction, and the impact of traffic and noise upon completion of the project." (ROR Exh. B, CT Page 11346 2/19/97 minutes, p. 1.) Mr. Ziaks, an engineer for the plaintiff, stated that there would be six months of blasting with construction during the day. (ROR Exh. B, 12/4/96 minutes, p. 23.) The record thus shows a basis whereby the commission could have concerns about the amount of blasting and its effects upon the conservation of the natural features of the area.
D. Approval of the Previous Application
The plaintiffs argue that the decision to deny the application was illegal, arbitrary and an abuse of discretion because the commission granted their previous application, and this application did not materially change the circumstances. (Plaintiffs' Brief, dated August 24, 1998, pp. 30-31.) The defendant argues that the application was materially different than the K-Mart application, and that the plaintiffs "consented to its being heard as a new application." (Defendant's Brief, dated October 26, 1998, p. 9.) The defendant specifies that the present application is different from the K-Mart application in numerous ways including the relief sought and traffic impact. (Defendant's Brief, dated October 10, 1998, pp. 10, 12-13.)
The record in the present case shows that the Commission desired to consider this application as a new application, at least for purposes of determining whether the regulations were satisfied. Ms. Wick, Chairman of the Commission stated that she was more comfortable dealing with the application as a new application, and that its fulfillment of the regulations should be considered independent of reference to K-Mart because she believed the references to K-Mart would cloud the issue. CROP., Exh. B, 11/6/96 minutes, p. 20-21.) Ms. Rose, the project manager for Konover Development Company, expressly agreed to considering the application as a new application. CROP., Exh. B, 11/6/96 minutes, p. 21.) The application shows differences from the previous application in terms of the hours of operation of the store, traffic generation figures, and the types of conveniences that will be associated with the store. In terms of traffic generation, the K-Mart project was expected to produce 730 vehicles during peak weekday hour, while the Stop Shop application was expected to produce 1,064 vehicles. (ROR Exh. B, 2/19/97 minutes, p. 23.) The Saturday peak figures show 990 vehicles for K-Mart and 1,120 for this application. (ROR Exh. B, 2/19/97 minutes, p. 23.) The record shows that this application was different from the previous application and that the parties discussed these differences. Therefore, the commission did not CT Page 11347 act arbitrarily, illegally or in abuse of its discretion in treating the Stop Shop application as a new application.
For the aforementioned reasons, the appeal is dismissed.
 THOMAS G. WEST