RED MAPLE PROPERTIES *v.* ZONING COMMISSION
OF THE TOWN OF BROOKFIELD ET AL.
(14341)

SHEA, CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued January 16—decision released June 18, 1992

*Vincent P. McCarthy,* for the appellant (plaintiff).

*James J. Carroll,* for the appellees (named defendant et al.).

BERDON, J. The principal issue in this appeal is whether a real estate developer, who sought a permit from a local zoning commission, had a property interest protected by the substantive component of the due process clause of the federal constitution. The plaintiff, Red Maple Properties, brought suit against the defendants, the zoning commission of the town of Brookfield (commission) and its members,[1] pursuant to 42 U.S.C. § 1983[2] claiming that its civil rights had been violated by the actions of the defendants in preventing the use of its property as a multi-unit condominium project after the plaintiff had received approval for two units. After the close of the plaintiff's case-in-chief, the trial court granted the defendants' motion for a directed verdict and this appeal followed from the judgment rendered thereon.[3] We now affirm the judgment of the trial court.

The relevant facts are as follows. The plaintiff is a limited partnership formed for the purpose of developing a parcel of land consisting of approximately 133

[1] The present action was originally brought also against the conservation commission of the town of Brookfield and all of its members. It was, however, withdrawn as to all defendants except the Brookfield zoning commission and its members, Richard Amorossi, Joseph Herbstritt, Joseph Kavalek, Alfons Ostermeier, William Schappert and George Steward.

[2] Title 42 of the United States Code, § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

acres, along Route 133 in Brookfield. The plaintiff, through its agent and general partner, Gull Development Corporation, entered into option agreements to purchase two pieces of land, which together comprised the 133 acre parcel.

The plaintiff sought to develop the parcel in phases for an expandable condominium project totalling 206 units. On January 13, 1983, the plaintiff filed a formal application with the defendants for approval of two units, known as "phase I," which was submitted as an application for design review approval. In February, 1983, the plaintiff, through its engineer, Paul Caroccio, and its representatives, Joseph and Susan Fritz, met informally with the then commission chairman, Alan Sniffin, and a commission member, William Schappert, to discuss the application. The plaintiff claimed at trial that at this meeting Sniffin and Schappert had given it "conceptual approval" for the entire 206 unit project, provided it complied with the zoning regulations in effect at that time.

A public hearing on the plaintiff's application for phase I was conducted on April 14, 1983. At the hearing, Sniffin stated that the commission was reviewing the development potential of 206 units on the plaintiff's land. On April 20, 1983, Sniffin sent the plaintiff's engineers a letter seeking additional information about the project, including data regarding wetlands protection and water supplies and the designation of local access drives. On June 23, 1983, the defendants approved the application for design review with respect to the two units.

On July 12, 1983, a lawsuit, which was subsequently withdrawn in 1985, was filed by some Brookfield residents appealing the decision of the defendants granting approval for phase I. In late 1984, the conservation commission proposed an amendment to § 242-404D of

the Brookfield zoning regulations, which provides for multifamily dwellings, including condominiums. The proposal sought, in effect, to place a "cap" on the number of multifamily dwellings allowed in the town. The defendants held public hearings, at which the plaintiff appeared and testified against the proposed amendment. On May 23, 1985, the defendants approved a modification of the regulation limiting multifamily dwelling projects to 150 units.[4] Prior to the change in the regulations, the plaintiff had not sought approval of any additional phases of its planned project. On October 24, 1985, the plaintiff sent the commission a letter inquiring whether its project would be "grandfathered," or exempted, under the new regulation. Schappert responded that under any new application submitted by the plaintiff, the commission would exempt only the two units, which had previously been approved.

The plaintiff brought the present § 1983 action in Superior Court claiming that its civil rights were violated by the defendants because the amendment to the regulation was arbitrary and capricious and was intended to thwart the plaintiff's entire project, which the plaintiff claimed had been given "conceptual approval." The plaintiff claimed at trial that it was entitled to approval of the entire project, and that its entitlement was a protected property interest sufficient to trigger federal substantive due process rights. In its amended complaint, the plaintiff also claimed it was

---

[4] Revised § 242-404D (2) of the Brookfield zoning regulations provides in part: "(a) Multifamily dwelling projects in excess of twenty-four (24) dwelling units shall only be located in areas where the main access drives thereto access directly upon Whisconier Road and Route 133.

"(b) Multifamily dwelling projects in excess of forty-eight (48) dwelling units shall only be located in areas where the main access drives thereto access directly upon Federal Road.

"(c) No multifamily dwelling project shall contain more than one hundred fifty (150) dwelling units."

deprived of its procedural due process rights. The plaintiff also pleaded but subsequently withdrew a claim of equitable estoppel.

The trial court granted the defendants' motion for a directed verdict upon concluding that the defendants were vested with broad discretion as to whether to approve an application for design review, and that this broad discretion manifestly overcame and defeated any claim that the plaintiff had established an entitlement allowing it to invoke the constitutional protections of the fourteenth amendment. The trial court summarily dismissed the plaintiff's claim of "conceptual approval."

The gravamen of the plaintiff's appeal is that it has a property interest in the zoning approval for its entire project, and that the defendants' actions arbitrarily and capriciously deprived it of its property interest in the approval, which violated its federal substantive due process rights. The plaintiff also claims on appeal that the trial court improperly: (1) found that the plaintiff had not advanced a procedural due process claim; and (2) excluded as irrelevant certain testimony of the plaintiff's project engineer, Paul Carroccio. We agree with the trial court that the plaintiff did not have a property interest protected by the substantive component of the due process clause of the federal constitution, and, therefore, we affirm the judgment of the trial court. We also reject the other claims of the plaintiff.

I

At the outset, we note that although we do not generally favor directed verdicts; *John T. Brady & Co.* v. *Stamford,* 220 Conn. 432, 440, 599 A.2d 370 (1991); "[a] verdict may properly be directed where the decisive question is one of law. *Rich* v. *Dixon,* 153 Conn. 52, 61–62, 212 A.2d 417 (1965); *Sedita* v. *Steinberg,* 105 Conn. 1, 5, 134 A. 243 (1926)." *Gottesman* v. *Aetna Ins. Co.,* 177 Conn. 631, 634, 418 A.2d 944 (1979). There-

fore, if the trial court properly determined that, as a matter of law, the actions of the defendants had not violated the plaintiff's substantive due process rights, then the trial court was correct in directing the verdict because " '[i]t is merely reaching more speedily and directly a result which would inevitably be reached in the end.' *People's Savings Bank* v. *Borough of Norwalk,* 56 Conn. 547, 556, 16 A. 257 (1888); *Simmons* v. *Southern Connecticut Gas Co.,* 7 Conn. App. 245, 250, 508 A.2d 785 (1986)." *Petriello* v. *Kalman,* 215 Conn. 377, 383, 576 A.2d 474 (1990).

The issue of whether a land developer has a protected property interest in the issuance of a permit that affords it substantive due process rights is one of first impression for this court. Therefore, we will look to the federal courts and, more specifically, to the Second Circuit Court of Appeals, for guidance. The disparate analytical treatment of the issue in the federal courts is thoroughly outlined in *RRI Realty Corporation* v. *Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.), cert. denied, 493 U.S. 893, 110 S. Ct. 240, 107 L. Ed. 2d 191 (1989) (*RRI*). In *RRI,* Judge Newman, writing for the majority, began the court's discussion of the issue by stating that the "[f]ederal courts have followed a somewhat uneven course in explicating the rationale for and the extent to which the substantive component of the Due Process Clause of the Fourteenth Amendment protects landowners in disputes with local agencies empowered to limit the permissible uses of their property." Id., 914. In tracing the genesis of such a claim, the court in *RRI* stated that "[t]he initial effort to subject local land use decisions to constitutional scrutiny involved challenges to new zoning restrictions imposed upon property owners. The Supreme Court's first consideration of such a challenge, though occurring in an era when substantive due process was often a formidable protection against governmental regula-

tion, met with significant rebuff. *Village of Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 2d 303 (1926). The Supreme Court ruled that zoning regulations will survive substantive due process challenge unless they are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' Id. at 395, 47 S. Ct. at 121." Id., 915.

Federal courts, when faced with early cases involving property owners seeking a change in the zoning regulations, applied the deferential standard of *Village of Euclid* without stating whether the property interest at stake was the land owned by the plaintiff *or* the zone change for which the plaintiff was applying. Id. Although the issue in *Board of Regents* v. *Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), was an interest in employment and not land, and involved procedural due process rights rather than substantive due process rights, the United States Supreme Court expanded the concept of property to include not only what is owned, but also what is sought. The court stated that to be a protected property right, there must be "a legitimate claim of entitlement." Id., 577.

It is at this point that the federal courts have diverged in their analysis of substantive due process challenges. Some courts, including the Second Circuit Court of Appeals, have relied on *Roth* and inquired whether the plaintiff has a " 'clear entitlement' to the approval he was seeking from the land use regulating body." *RRI,* supra, 915. In *Yale Auto Parts, Inc.* v. *Johnson,* 758 F.2d 54, 59 (2d Cir. 1985), the court determined that the plaintiff had a " 'clear entitlement' " to a permit when, "absent the alleged denial of due process, there is either a *certainty or a very strong likelihood* that the application would have been granted." (Emphasis added.) The court affirmed the dismissal of the plaintiff's claim of a protected property interest in the per-

mit sought by it because the licensing authority responsible for the issuance of that permit had broad discretion either to grant or to deny the permit. "Basically, [the court's] focus is on the extent of the issuing agency's discretion to grant or deny the permit in question." *Natale* v. *Ridgefield,* 927 F.2d 101, 105 (2d Cir. 1991). The Second Circuit has adhered to the "property interest analysis" and *"Yale Auto Parts* and its progeny have committed [the Second] Circuit to the 'entitlement' inquiry in land use regulation cases." *RRI,* supra, 917–18.[5]

"Many post-1972 land regulation decisions, however, have not pursued the *Roth* analysis in land regulation cases. Instead of inquiring as to the plaintiff's degree of entitlement to what he sought, these decisions have implicitly assumed that the pertinent property interest is the property the plaintiff owns and simply examined whether the action of local regulators in denying an application for the proposed use of the land was arbitrary and capricious. . . . *Bello* [v. *Walker,* 840 F.2d 1124, 1129 (3d Cir.), cert. denied, 488 U.S. 851, 109 S. Ct. 134, 102 L. Ed. 2d 107 (1988)], is a clear example of a court focusing exclusively on whether the local land use regulator acted arbitrarily and capriciously without inquiry as to whether the protected property interest is in the land the plaintiff owns and is seeking to use or in the permit he requires for his intended use . . . ." *RRI,* supra, 916.

Although Judge Newman in *RRI* raised the question of whether it is appropriate to adhere to the *Roth* entitlement theory, he recognized that the Second Cir-

---

[5] The same analysis was applied in *Scott* v. *Greenville County,* 716 F.2d 1409 (4th Cir. 1983), upon which the trial court in the present case relied. In *Scott,* in determining that the plaintiff had a clear entitlement to a building permit, the court first asked whether the plaintiff had a " 'protectable property interest in the permit' sufficient to trigger federal due process guarantees." Id., 1418.

cuit is committed to it.[6] We, likewise, will dip our oars into the same waters by adopting the *Roth* entitlement analysis for a claim of a § 1983 substantive due process violation for land use cases.[7]

In fashioning our analysis, "the entitlement test of *Yale Auto Parts*—'certainty or a very strong likelihood' of issuance—must be applied with considerable rigor. Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case. . . . *Yale Auto Parts* rejected the claim of a property interest in the permit

---

[6] In *RRI Realty Corporation* v. *Incorporated Village of Southampton,* 870 F.2d 911, 917–18 (2d Cir. 1989), Judge Newman, writing for the majority of the court, stated the following: "It is not readily apparent why land regulation cases that involve applications to local regulators have applied the *Roth* entitlement test to inquire whether an entitlement exists in what has been applied for—whether a zoning variance, a business license, or a building permit—instead of simply recognizing the owner's indisputable property interest in the land he owns and asking whether local government has exceeded the limits of substantive due process in regulating the plaintiff's use of his property by denying the application arbitrarily and capriciously. . . . Indeed, the entitlement inquiry will not often aid the analysis in this context. . . . In any event, [*Yale Auto Parts, Inc.* v. *Johnson,* 758 F.2d 54 (2d Cir. 1985),] and its progeny have committed [the Second] Circuit to the 'entitlement' inquiry in land use regulation cases."

[7] In deciding to adopt the analysis of the Second Circuit Court of Appeals, we recognize that "[t]he decisions of the federal circuit in which a state court is located are entitled to great weight in the interpretation of a federal statute. This is particularly true in 42 U.S.C. § 1983 cases, where the federal statute confers concurrent jurisdiction on the federal and state courts. It would be a bizarre result if this court [adopted the 'arbitrary and capricious' analysis] when in another courthouse, a few blocks away, the federal court, being bound by the Second Circuit rule, required [the '*Roth* entitlement test']. We do not believe that when Congress enacted the concurrent jurisdiction provision of § 1983 that it intended to create such a disparate treatment of plaintiffs depending on their choice of a federal or state forum." *Tedesco* v. *Stamford,* 24 Conn. App. 377, 385, 588 A.2d 656 (1991), rev'd on other grounds, 222 Conn. 233, 610 A.2d 574 (1992) (in *Tedesco,* the § 1983 issue before the Appellate Court was whether the plaintiff's counsel must have submitted contemporaneous time records to recover attorney's fees or if reconstructed time sheets were sufficient).

being sought because of the discretion of the local regulating body. Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest. The 'strong likelihood' aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised." (Citations omitted.) *RRI,* supra, 918. Because the focus of the inquiry is on the degree of discretion of the authority, the question of whether an applicant has a property interest is normally a matter of law for the trial court. Id. Because it is a matter of law, the trial court's determination is subject to a de novo review. See *Aetna Life & Casualty Co.* v. *Bulaong,* 218 Conn. 51, 58, 588 A.2d 138 (1991).

In this case, the trial court first concentrated on the permit that the plaintiff had actually obtained—that is, approval of the design review application for two units. The court in its memorandum of decision set out the testimony of the plaintiff's witnesses who conceded that the defendants had discretion in granting a design review application.[8] The trial court concluded that the

---

[8] The trial court focused on the following testimony: 1. Questions propounded to Paul Carroccio, the plaintiff's engineer:

"Q. Now, the application was a design and review application?

"A. Design review.

"Q. Design review. Can you explain to me what that was in Brookfield in 1983—January '83?

"A. Basically, it was a requirement of the regulations, that for any commercial, industrial, multifamily project, you had to meet the design review requirements. Which included site plan review, the aesthetics—

"The Court: And, he emphasized aesthetics—

"Q. What do you mean by aesthetics, Paul?

"A. Whether or not the project fit aesthetically with the characteristics—

plaintiff had not demonstrated a "clear entitlement" to the permit because "as the linchpin of the determination of an entitlement, the evidence here unequivocally establishes that broad discretion was vested within the zoning commission of the town of Brookfield on the

"Q. You mean, did the zoning commission have discretion of not approving it, if it was an eye sore?
"A. To some degree, yes

*  *  *

"Q. So, if they don't like it, they can reject it; right—on the design review?
"[Carroccio]: It sounds arbitrary but I suppose they could."
2. Questions propounded to William Schappert, commission member:
"A. Again, this is a design review application and there is a special permit and there are quite a few discretionary items—broad discretionary items—within the design review process. And, one thing that we had to consider, was the adequacy of the water supply for something more than two units. And we specifically said—I think, specifically said, you have to give us something more than talks about the water budget. And, water budget is normally meant to be, tell us what capacity is required for this project. In other words, if you're going to have so many people on the site, how much gallonage per day constitutes the capacity required for the budget and then all the engineering information is to be provided where you're going to get that capacity from. We could get it from annual rainfall or you would get it from septic re-generation or something like that. So, as far as the data, we said you have to provide us within something to make a judgment on the adequacy of that. And a water budget analysis sounded like something that would demonstrate that.
"Q. Is that a water budget analysis for the entire site?
"A. I believe so."
3. Questions propounded to Neil Marcus, an attorney for the plaintiff:
"Q. Now, you know the difference under the zoning regulations—the Brookfield zoning regulations—between site plan approval and design review; do you not?
"A. Sure.
"Q. And, you would agree with me that design review—approval—is a completely different type of approval and that it is very, very encompassing—all encompassing?
"A. It includes the site plan review.
"Q. It includes the site plan review and many other items; doesn't it?
"A. You bet.
"Q. And, when the zoning commission considers design review, given the nature of the Brookfield zoning regulations, it has broad discretion on what it thinks is relevant to review and how it reviews it. Isn't that correct?
"A. They have very broad discretion."

question of the approval of an application for design review." The trial court stated that the defendants' broad discretion "manifestly [overcame] and [defeated] any claim" of an entitlement that would have invoked the constitutional protections of the fourteenth amendment. We agree with the trial court.

As for the plaintiff's claim that the defendants had given it "conceptual approval" for the entire project, the plaintiff argues that this was indicative of a clear entitlement for the entire project because such approval was the understanding of the parties and not "merely a unilateral hope or expectation"; *Yale Auto Parts, Inc.* v. *Johnson,* supra, 58; on its part. The trial court found, and a review of the record confirms, that there is no provision or definition of "conceptual approval" in the Brookfield zoning regulations. The trial court then dismissed the "conceptual approval" as "nothing more than an amorphous phantom lurking somewhere in a newly created or hopefully created category in an attempt to raise a favorable endorsement (approval) of some sort." We agree with the trial court and note, moreover, that the plaintiff conceded at oral argument that even if there were a provision for conceptual approval in the Brookfield zoning regulations, such approval must be given at a formal meeting of the whole commission and was not bestowed through the informal communication of some of its members.

II

The plaintiff also claims that the defendants violated its procedural due process rights. We find this claim to be without merit for two reasons. First, although the plaintiff's amended complaint alleged a procedural due process violation, the plaintiff admitted at trial the following: "Your Honor has asked me repeatedly what our claim is and I've repeatedly said substantive due process. . . . [T]he primary basis for this case is sub-

stantive due process." The plaintiff's counsel went on to say that he had "read no cases involving a developer and procedural due process rights . . . [and] I'll admit, I have no cases." Although the trial court did not specifically order the plaintiff to strike the procedural due process claim from its amended complaint, the trial court stated, "No question about it, if there is any basis for [the plaintiff's claim], it's substantive due process."

Second, the plaintiff's *procedural* due process claim is nothing more than its substantive due process claim in a different guise. In making its procedural due process claim on appeal, the plaintiff alleges that "[o]nce the plaintiff obtained its June 23, 1983 approval, it expected that it at least had the right to come back before the defendant commission with its final plans for subsequent phases and have those phases judged in the light of the regulations in effect at the time of the June 1983 approval." The plaintiff provided no authority for this claim that its procedural due process rights were violated as a result of not having been exempted from the new regulations.

### III

The plaintiff's last claim on appeal is that the trial court abused its discretion in excluding portions of Carroccio's testimony as irrelevant. Carroccio was asked on direct examination to state his understanding of the procedure for obtaining the commission's approval on the basis of conversations he had had with two of the commission members. The commission objected on the ground of relevancy and the jury was excused while the plaintiff made an offer of proof.[9] After the offer

[9] For the offer of proof, Carroccio testified, outside the presence of the jury, that the commission members implied that the plaintiff would get "conceptual approval for the project, the project being the full site. And that in order to get final approvals for each phase, [the plaintiff] would have to submit details for each phase prior to constructing that phase." Carroccio was then asked what he understood would happen if the plaintiff obtained

of proof was made, the trial court sustained the commission's objection. Because we have already stated that the informal conversations of any commission member or members could not in any way bind the commission as to how it would subsequently act on a given application, we conclude that the trial court was correct in excluding this portion of Carroccio's testimony on the ground that the testimony was irrelevant.

The judgment is affirmed.

In this opinion the other justices concurred.

its "other approvals and then applied for the subsequent phases." He answered that "unless [the plaintiff] could not meet the requirements of the regulations, those phases would be approved." Finally, Carroccio testified that he had not understood, from his conversations with the commission members, that the commission could change the regulations so that the plaintiff would be precluded from filing subsequent applications.