[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE SPECIAL DEFENSES
On October 28, 1992, the plaintiff, Timothy R.E. Keeney, the Commissioner of Environmental Protection, filed a fourteen count amended complaint against the defendant, Quality Rolling and Deburring Co., Incorporated, alleging violations of a State Permit issued by the plaintiff, and various sections of General Statutes § 22a, which governs water pollution. On July 18, 1994, the defendant filed its answer and four revised special defenses. On August 25, 1994, Plaintiff moved to strike all four special defenses.
-I-
In its first special defense, the defendant claims that the plaintiff is guilty of laches and, therefore, the plaintiff's action and request for civil penalties ought to be barred. The defendant alleges that beginning on August 18, 1988, the defendant entered into a series of correspondence with the plaintiff concerning the modification of its existing waste treatment equipment by which it treated the waste water generated by its metal finishing business prior to its discharge to the Thomaston sewer system and the Naugatuck River; that thereafter the defendant has in good faith attempted to satisfy and fully cooperate with the plaintiff's requests for additional testing procedures and modifications to the plans originally submitted to the plaintiff in order to obtain approval for the requested modifications to its existing waste water treatment system; that defendant has expended in excess of $250,000.00 for engineering reports, testing, various proposals and related costs attempting to comply with the requests of the plaintiff and to enhance the quality of its treatment facility. The defendant further alleges that he has not received approval from the plaintiff to make the proposed modifications; that any CT Page 1031 violations by the defendant of the effluent limits contained in its permits arose from its inability to modify its waste water treatment system, which was directly related to the plaintiff's unreasonable delay in responding to the plaintiff's requests to make such modifications; that such laches and unreasonable delay were without good cause and substantially prejudiced the defendant in a number of listed ways.
Plaintiff claims that the defendant's first special defense should be stricken because the equitable doctrine of laches cannot prevent the State, acting in its sovereign capacity, from enforcing its laws and regulations. The defendant argues that this special defense is equitable in nature and is a proper special defense to interpose to the plaintiff's claim for civil penalties under the terms of Connecticut General Statutes § 22a-438(a).
Our Supreme Court in Dupuis v. Submarine Base CreditUnion, Inc., 170 Conn. 344, 353, 1093 (1976) held that the defense of laches may not be invoked against a governmental agency. Recent Superior Court decisions have followed this rule. Commissioner v. DeMilo Co., 2 CSCR 880-81 (September 14, 1987, Ripley, J.) (defense of laches unavailable when government sues to enjoin public nuisance); Burns v. Lehigh, Inc., 4 CSCR 34, 34-35
(January 16, 1989, Allen, J.) (motion to strike laches as a special defense granted in an action by the Commissioner of Transportation to recover costs incurred in removing contamination of subsurface soil and groundwater).
Where the State is acting in its governmental capacity to enforce environmental laws and regulations, the defense of laches is unavailable. Accordingly, plaintiff's motion to strike the defendant's first special defense of laches is granted.
-II-
In its second special defense, the defendant claims that the plaintiff was negligent in his duty to carry out his regulatory responsibilities consistent with the law he is charged to administer, and that defendant was denied its right to due process under the Fourteenth Amendment to the Constitution of the United States and Article 1 Section 10 CT Page 1032 of the Constitution of the State of Connecticut.
To consider this claim a summary of the extensive allegations contained in the second special defense is necessary.
The defendant alleges that on September 3, 1985, the plaintiff, pursuant to General Statutes § 22a-430, issued to the defendant NPDES Permit NO. CT0025305, authorizing the discharge of treated metal finishing waste water to the Naugatuck River; that after issuing the permit, the plaintiff determined in accordance with the statute that the treatment system installed by the defendant would protect the waters of the State from pollution; that on August 29, 1985, the plaintiff, issued State Discharge Permit No. SP0000100 to the Defendant, authorizing the discharge of certain metal finishing waste water to the Thomaston sanitary sewer system; that in issuing the permit, the plaintiff determined that the discharge system installed by the defendant would protect the waters of the State from pollution.
The defendant alleges further that on October 17, 1987, the defendant, independent of any other actions taken on the part of the plaintiff, determined that its treatment facilities, as approved by the plaintiff pursuant to NPDES permit No. CT0025305, might not in the future be adequate to protect the waters of the State from pollution, and brought the information to the attention of the Commissioner in the form of a proposal for modification of the defendant's waste treatment system and process areas; that in response to the defendant's proposals to the plaintiff for modification to the existing system, the plaintiff informed the defendant at a meeting on October 30, 1987 that what the defendant was proposing would require a formal permit modification prior to installation of the upgraded system and that bio-assay tests would have to be performed upon the defendant's existing discharges before additional treatment equipment, as proposed by the defendant, could be installed; that the defendant continued to process such application and on June 3, 1988, submitted a proposal to install new treatment systems; that by letter dated October 11, 1988, the plaintiff responded by noting that concept was acceptable and might meet all toxicity requirements that it did not think that "it makes sense to CT Page 1033 upgrade the treatment system now, and then have to upgrade it again in a year to insure that toxicity limits will be met."; moreover, for the first time, the plaintiff notified the defendant with respect to State Discharge Permit No. SP 0000100 that the defendant would have to apply for modifications to that permit as well.
The defendant claims that despite the representations made by the plaintiff in its letter dated October 11, 1988 concerning the defendant's proposed modifications, the plaintiff took no steps either to process a permit modification or otherwise authorize the defendant to process its proposed systems to treat the discharges in accordance with the defendant's proposed compliance schedule included with its July 27, 1988 submission other than to subject the defendant to additional limitations on its discharge.
Based upon the above and additional allegations of correspondence and the submission of reports and evaluations, defendant claims that plaintiff by his failure to act for five years when it acted to authorize the installation of corrective systems operated to deny the defendant its right to Due Process under theFourteenth Amendment to the Constitution of the United States and Article 1 Section 10 of the Constitution of the State of Connecticut.
II (A)
The plaintiff claims that the second special defense of violation of due process fails to allege a constitutionally protected property interest, vital to a due process claim, because it does not satisfy the "clear entitlement" test adopted by our Supreme Court in Red MapleProperties v. Zoning Commission, 222 Conn. 730,610 A.2d 1238 (1992).
The defendant argues that the inquiry under the clear entitlement test is whether there is a certainty or very strong likelihood that the application in question would have been granted, but for the wrongful conduct of the plaintiff's staff. The defendant asserts that its claimed property interest "is not in the permit modifications requested as argued by the plaintiff, but in its right to CT Page 1034 comply with the terms of its existing permits which had already been granted by the plaintiff, permits to which Defendant had substantive rights and a clear entitlement unless and until they were revoked or suspended after notice and an opportunity to be heard pursuant to law."
Our Supreme Court has held that the due process requirements of the U.S. Constitution and Article I, Section 10 of the Connecticut Constitution "have the same meaning and impose similar constitutional limitations."Roundhouse Construction Corp. v. Telesco Masons SuppliesCo., 170 Conn. 155, 157, cert. denied, 429 U.S. 889 (1976). Recently, our Supreme Court adopted the "clear entitlement" test as a guide to determining whether one has sufficiently stated a due process claim which mandates the possession of a constitutionally protected property interest as a threshold requirement for a successful substantive or procedural federal due process claim." Kelley PropertyDevelopment, Inc. v. Lebanon, 226 Conn. 314, 321-22,627 A.2d 909 (1993). That decision states:
 The `clear entitlement' test asks whether there is a certainty or a very strong likelihood that the application in question would have been granted, but for the wrongful conduct of the local officials. A very strong likelihood means not simply a high probability of approval, but rather a virtual assurance of approval because any discretion is narrowly circumscribed. Application of the [`clear entitlement'] test must focus primarily on the degree of discretion enjoyed by the issuing authority, not on the estimated probability that the authority will act favorably in a particular case.'
(Citations and internal quotation marks omitted.) Id., 322-23.
It is clear that under General Statutes § 22a, the defendant's proposed modifications were subject to the Commission's discretion and moreover that nothing in the Connecticut Water Pollution Regulations clearly entitles CT Page 1035 the defendant to the approval of its permit modifications. Defendant's proposed modifications were not "virtually assured" to be approved, since the Commissioner has broad discretion in determining whether to approve or deny them. The defendant's special defense boils down to the claim that the defendant was wrongfully denied a permit modification. We conclude that the defendant has failed to allege a "clear entitlement," the critical element to a due process claim and accordingly the plaintiff's motion to strike the defendant's second special defense is granted.
 III
In its third special defense, the defendant claims that the alleged failures on the part of the plaintiff made it impossible for the defendant to comply with the effluent limitations contained in its permits, thus making the imposition of civil penalties in the present action unconstitutional under the Fifth Amendment to the United States Constitution and Article 1. Section 11 of the constitution of the State of Connecticut because the plaintiff's actions in carrying out its statutory grant of authority denied it equal protection as guaranteed by the federal and state Constitutions.
The plaintiff argues that the defendant's third special defense, which alleges a violation of the Equal Protection Clauses of Article I, Section 1 of the state constitution and the Fifth Amendment to the federal Constitution, should be stricken because they fail to supply the necessary factual elements to support allegations that the plaintiff violated the defendant's constitutional rights.
The Fifth Amendment claim in the defendant's third special defense is insufficient because "[t]hefifth amendment . . . serves as a limitation only on the powers of the United States government and affords no ground for relief against the state of Connecticut." Tamm v. Burns,222 Conn. 280, 282, n. 1, (1992).
III (A)
The third special defense also claims that Article I, Section I of the Connecticut Constitution is a defense to CT Page 1036 plaintiff's allegations of environmental pollution, alleging that the plaintiff's inaction on permit modifications deprived defendant of its right to pursue a lawful business and to be treated equitably as a member of the community.
Article I, Section I of the Constitution of the State of Connecticut provides, "[a]ll men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." The court in Golab v. New Britain,205 Conn. 17, (1987), set out the standards one must meet in order to assert an equal protection claim based on unequal application of the law: "Equal protection of the laws prohibits the unequal treatment of those who are similarlysituated. . . . An equal protection claim based on unequal application of the law does not arise from conclusory allegations regarding past decisions, but rather must be established by competent evidence. There must be a showing of [intentional or purposeful discrimination."]** Id., 26.
Defendant has failed to allege facts which, if proven, would show that it was treated differently from other companies who are similarly situated or that there was intentional or purposeful discrimination on the part of the plaintiff, which would be necesary [necessary] to support a claim of denial of equal protection based on unequal application of
III (B)
The defendant also contends that it was denied equal protection of the laws because the plaintiff's actions deprived it of its right to operate a lawful business.
Where a claimant alleges a denial of its right to operate a lawful business based on an ordinance that is not regulatory, but is prohibitory, such an allegation of facts is sufficient to make an equal protection claim credible.Gionfriddo v. Windsor, 137 Conn. 701, 704, (1951). However in that case the court noted that even prohibitory ordinances would be upheld under the equal protection clause if they were essential to the protection of public health. Id.
In this case the plaintiff is seeking to enforce CT Page 1037 regulatory environmental statutes designed for the protection of public health and, therefore, the special defense has failed to allege sufficient facts to support a valid defense under the equal protection clause based on denial of one's right to operate a lawful business.
III (C)
Finally, the defendant also claims in its third special defense that the plaintiff violated the defendant's rights as guaranteed by Article I Section 11 of the Constitution of the State of Connecticut.
Article I, Section 11 of the Constitution of the State of Connecticut, the "takings" clause, provides that "[t]he property of no person shall be taken for public use, without just compensation therefor." The Connecticut Supreme Court has explained that "there is no taking in a constitutional sense unless the property cannot be utilized for any reasonable and proper purpose . . . as where the economic utilization of the land is, for all practical purposes, destroyed." Horak v. State, 171 Conn. 257, 261, (1976). In addition, "a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any
reasonable alternative use of his property." Gil v. InlandWetlands Watercourses Agency, 219 Conn. 404, 415, (1991).
Defendant has not alleged any facts which would prove that the denial of its permit modifications destroyed the economic utilization of its land or that the plaintiff did not allow any reasonable alternative use of its property. We conclude that the defendant has failed to allege sufficient facts to support a cause of action under Article I, Section 11 of the Connecticut Constitution.
Plaintiff's motion to strike this defendant's third special defense is granted.
 IV
In its fourth special defense, the defendant claims that the failures on the part of the plaintiff make it highly inequitable and oppressive to impose civil penalties on the defendant, and therefore, the plaintiff should be CT Page 1038 estopped from pursuing the present action seeking civil penalties. Alternatively, the defendant claims that the failures on the part of the plaintiff serve to mitigate the plaintiff's request for the imposition of civil penalties as the interests of justice may require.
The general rule is that estoppel may not be invoked when a government is functioning in its governmental capacity. Kimberly-Clark Corporation v. Dubno, 204 Conn. 137,146 (1987). There is a limited exception to this rule: "Estoppel against a public agency is limited and may be invoked: 1) only with great caution; 2) only when the action in question has been induced by an agent having authority in such matter; and 3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." Id., 148.
Viewed in the light most favorable to the pleader, we believe that the defendant has alleged sufficient facts of a somewhat extraordinary nature to support the application of estoppel against the plaintiff in the present case.
Those facts if proven would show that the resulting violation was induced by an agent having authority in such matters and that the plaintiff unjustifiably induced the defendant into failing to meet its permit specifications; that the specific actions the defendant has alleged were undertaken by an agent of the plaintiff, a Sanitary Engineer with the Water Compliance Unit of the Department of Environmental Protection; and that the actions the defendant has alleged were within the delegation of authority given by the Commissioner of Environmental Protection to the Water Compliance Unit and its employees that the plaintiff failed to comply with the procedures mandated by the general statutes and regulations in that it took no steps either to process a permit modification or otherwise to order the defendant to proceed with the completion of design and installation of its proposed systems to treat the discharges; and that the plaintiff's inaction was the cause of defendant's inability to meet the existing permit specifications.
The above allegations, if proven, would support the necessary element that these special circumstances would make it highly inequitable or oppressive to enforce at CT Page 1039 least the imposition of civil penalties sought in this case, or to mitigate them.
Exercising appropriate caution, we deny the Motion to Strike the Fourth Special Defense.
In summary, plaintiff's Motion to Strike First, Second and Third Special Defenses granted. Motion to Strike Fourth Special Defense denied.
Wagner, J.