[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, two related Connecticut businesses, plaintiffs ShareAmerica, Inc. and ShareAmerica Limited Partnership (collectively "plaintiffs" or "ShareAmerica"), have sued their former accountants and independent auditors, the defendant accounting firm of Ernst Young,[1] to recover money damages for certain losses they claim to have suffered as a result of the defendant's unilateral, assertedly unjustified withdrawal from its professional engagement on August 2, 1990. In their four-count Second Amended Complaint dated March 29, 1994 ("complaint"), the plaintiffs claim that the challenged withdrawal from engagement and accompanying withdrawal of consent to use and rely on certain previously prepared reports concerning CT Page 9952 the plaintiffs' April 1990 financial statements prevented them from proceeding with the then-imminent public offering of shares in the limited partnership. As a result, claim the plaintiffs, they lost $4.5 million in anticipated proceeds from the public offering, plus the entire market value of the company that was to have been established by the public offering and future profits from its business. In addition, they claim that they were thereby forced to incur substantial unnecessary expenses in wasted preparation for the thwarted public offering, including those billed for the defendant's services.
The plaintiffs assert that the defendant is liable to pay them damages for their above-described losses on the following theories of liability: (1) breach of contract, as pleaded in the First Count of the complaint, because the defendant allegedly withdrew from its professional engagement in violation of the express and implied terms of its April 1988 service agreements with the plaintiffs; (2) "tort," as alleged in the Second Count of the complaint, because the defendant's withdrawal from its professional engagement was allegedly made in "violation of [its] duty to act in good faith and in accordance with AICPA [American Institute of Certified Public Accountants] Professional Standards;" (3) "negligence," as pleaded in the Third Count of the complaint, because the defendant allegedly withdrew from its professional engagement for false or insubstantial reasons and failed to discuss with them or otherwise attempt to resolve the concerns that prompted its withdrawal, all in violation of the standards and principles of the accounting profession; and (4) "unfair trade practices," as pleaded in the Fourth Count of the complaint, because the defendant's alleged "failure to follow the standards and principles of [its] profession and the breach of its agreement (sic) constitute egregious behavior and an unfair trade practice under Connecticut General Statute[s] Section42-110b." The defendant has denied or left the plaintiffs to their proof as to the essential allegations of each count of the complaint and has interposed several special defenses. The plaintiffs have replied to each special defense with a general denial.
The defendant has moved this Court for summary judgment on the Second and Fourth Counts of the plaintiffs' complaint. As grounds for this motion, which was filed under the authority of § 17-44 et seq. of the Connecticut Practice Book, the defendant asserts that it is entitled to judgment as a matter of law because neither challenged count states a viable cause of CT Page 9953 action under Connecticut law. The defendant's motion was accompanied by a substantial memorandum of law, but was unsupported by any affidavits, certified transcripts, disclosures, written admissions or other evidentiary material. The defendant later supplemented its initial memorandum with a reply memorandum, which was submitted in response to an opposing memorandum from the plaintiffs and an opposing affidavit from ShareAmerica, Inc.'s president, Charles Smith. For the following reasons, the Court concludes that the defendant's motion must be denied as to the Second Count but granted as to the Fourth Count of the complaint.
 I
"Summary judgment is a method of resolving litigation when the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989) (Citations omitted). The burden of proof on a motion for summary judgment is on the moving party; Fogarty v. Rashaw, 193 Conn. 442,445, 476 A.2d 582 (1984); who must clearly show that there is no genuine dispute either as to the existence of one or more facts which, if established, would entitle him to judgment as a matter of law, or as to the nonexistence of one or more facts upon which his opponent's right to judgment materially depends.
In deciding a motion for summary judgment, the trial court must employ the same standard it would use in deciding a motion for a directed verdict. Suarez v. Dickmont Plastics Corp. ,229 Conn. 99, 105, 639 A.2d 507 (1994). In Connecticut, the direction of a verdict is only "justified if upon the evidence the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as rendered."Bernardo v. Hoffman, 109 Conn. 158, 159, 145 A. 884
(1929).
In the typical case, where the moving party challenges the sufficiency of the nonmovant's evidence to support his claim or cause of action, the question presented for decision is whether that evidence, when viewed in the light most favorable to the non-movant, is reasonably capable, if credited, of sustaining a verdict in his favor. United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 380, 260 A.2d 596 (1969). This case, however, is not typical, for here the moving party does not contest the sufficiency of the plaintiffs' evidence to prove the CT Page 9954 claims allegedly presented in the challenged counts, but rather the sufficiency of the allegations of those counts to state valid claims upon which relief can be granted. The threshold question thus arises whether such a challenge, which is traditionally presented in a motion to strike, is an appropriate basis upon which to seek or grant summary judgment.
In Burke v. Avitabile, 32 Conn. App. 765, 772, 630 A.2d 624
(1993), the Appellate Court flatly stated that it was not, observing that" [t]he office of a motion for summary judgment is not to test the legal sufficiency of the complaint, but is to test for the presence of contested factual issues. Practice Book § 384 [now § 17-49]." However, in the earlier case ofBoucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409, 279 A.2d 540
(1971), cited by the Burke Court but described as "anomalous," id.
at 772 n. 9, the Supreme Court disagreed, clearly stating that in the case before it, "[t]he proper way to have tested the legal sufficiency of the complaint . . . would have been, . . . after an answer had been filed, by a motion for summary judgment." BoucherAgency, Inc. v. Zimmer, supra, 160 Conn. at 409. Since lower court judges are bound by Supreme Court precedents, prudence suggests that they follow such precedents, however "anomalous" they may seem. Accordingly, this Court will follow Boucher rather than Burke, and will treat the defendant's challenge to the legal sufficiency of the plaintiffs' complaint as a proper basis upon which to consider granting summary judgment.
More, however, than simple prudence supports the Court's conclusion that the defendant's motion may properly be considered on the grounds alleged. In fact, the appropriateness of granting summary judgment on the ground of failure to plead a valid claim or cause of action finds support both in our law governing the direction of verdicts and in the logic of our summary judgment rules, as traditionally described and formulated.
Over seventy years ago, in Sedita v. Steinberg, 105 Conn. 1,5, 134 A. 243 (1926), our Supreme Court explained that a civil verdict may properly be directed for reasons other than insufficiency of the evidence. It observed, in particular, that:
A verdict may be directed where the evidence is undisputed, where the only question is one of law, where the plaintiffs evidence is such that if a verdict was rendered in his favor it would properly be set aside, where reasonable men cannot differ as to the verdict which ought to be rendered, where more CT Page 9955 than one conclusion is not reasonably open to the jury upon the evidence.
Id. (Emphasis added.)
Over the years, the rule that a verdict can be directed where the decisive issue is one of law, not one of fact, has never been abandoned. See, e.g., Rich v. Dixon, 153 Conn. 52, 61-62,212 A.2d 417 (1965) (noting that "[a] verdict may be directed where the decisive question is one of law"); Gottesman v. Aetna Ins. Co.,177 Conn. 631, 634, 418 A.2d 944 (1979) (same); Red MapleProperties v. Zoning Commission, 222 Conn. 730, 735, 610 A.2d 1238
(1992) (same). To the contrary, it has frequently been cited as a proper legal basis for directing a verdict when a challenged count or pleading fails to state a valid claim or cause of action. See, e.g., Stavnezer v. Sage-Allen Co., 146 Conn. 460,462, 152 A.2d 312 (1959) (holding that the trial court erred by failing to grant the defendant's motion, made at the close of all the evidence, to direct a verdict "on the ground . . . that the only cause of action set forth in the complaint was [a] . . . defective one sounding in slander"); Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 573, 479 A.2d 781 (1984) (holding, inter alia, that where the facts alleged in the first count of the plaintiffs complaint were inadequate to establish a legally cognizable breach of the implied covenant of good faith and fair dealing, a verdict should have been directed on that count); . . . Red MapleProperties v. Zoning Commission, supra, 222 Conn. at 735
(upholding the trial court's direction of a verdict on the ground that the plaintiffs claim did not constitute a substantive due process violation as a matter of law). Logically, if our standard for granting summary judgment is identical to that for directing a civil verdict, and a civil verdict can lawfully be directed because the pleader has failed to state a valid cause of action, summary judgment can be lawfully granted where the challenged count or pleading is legally deficient.
The wording of our traditional standard for granting summary judgment is entirely consistent with the foregoing conclusion. Under that standard, to restate it, summary judgment can be granted when the moving party proves that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven,supra, 213 Comm. at 279.
Whether or not there is a "genuine issue" as to any "material CT Page 9956 fact" is a two-part inquiry. The first question to be answered is whether or not the fact as to which the moving party claims there is no genuine issue is indeed a "material fact" — that is, "a fact which will make a difference in the result of the case[.]" Yanow v. Teal Industries, Inc., 178 Conn. 262, 268,494 A.2d 573 (1979). Such a fact, to reiterate, is one whose demonstrated existence or nonexistence would conclusively establish the moving party's right to judgment as a matter of law.
Once it is established that a particular fact is "material" to the outcome of the case, it must be determined whether or not there is any "genuine issue" as to that fact. This, in turn, depends both on the contents of the challenged pleading and on the nature and quality of the parties' competing proof. The role of the pleading in answering this question is itself twofold. First, the pleading sets forth the ultimate facts upon which the plaintiff bases its claims and causes of action. Second, the pleading states, with greater or lesser specificity, the particular historical facts upon which proof of those ultimate facts will be attempted. It is a matter of axiom that a party can prove no more at trial than he has duly pleaded in his operative pleadings. Therefore, if a party omits from his complaint an essential element of his claim or cause of action, he can be barred by timely objection from introducing any proof of that element at trial. There can be "no genuine issue" as to any unpleaded fact because that fact has not been placed in issue at all.
Similarly, there can be no genuine issue as to any material fact which, though duly pleaded, is claimed to exist based solely upon predicate facts which do not establish it as a matter of law. When a party pleads his case under a single theory of liability, he restricts himself to proving the case under that theory to the exclusion of all others. When a party so restricts himself in his pleading, and the facts alleged in the pleading are legally insufficient to support his claim, the claim may appropriately be disposed of by summary judgment. In that event, it is irrelevant whether or not the pleader has evidence that would support a properly pleaded claim. Since no such claim has been pleaded, it is simply not at issue in the case.
Against this background, this Court concludes that it may properly grant a motion for summary judgment based on the proven insufficiency of a plaintiffs challenged count or pleading to CT Page 9957 state a claim upon which relief can be granted.
 II
The Second Count of the plaintiffs complaint is entitled "tort." This unilluminating choice of caption is curious, for the traditional purpose of putting titles on the separate counts of multi-count pleadings is to identify' the specific claims therein presented, yet as the defendant rightly notes, there is no cause of action in Connecticut known simply as "tort."
Beyond its curiosity, however, the caption in question is of no special moment for two basic reasons. First, there is nothing in our Practice Book or case law to require that a plaintiff put titles on the counts of his pleadings. To the contrary, Practice Book § 10-1,[2] which specifies the minimum contents of a Connecticut civil pleading, contains no requirement of a caption, and Practice Book Form 104.1,[3] entitled "Complaint — Several Causes of Action," depicts the model multi-count complaint without them. Second, the use of a caption to entitle a count is not a factual allegation, which one's opponents must duly answer, but a legal conclusion by the pleader as to the purported contents of the captioned count. Courts are not bound by the legal conclusions of pleaders, even where they are pleaded as if they were facts in the consecutively numbered paragraphs of the complaint. See Practice Book § 10-1, supra at 8 n. 1. To the contrary, a court must ignore a pleader's legal conclusions when assessing the sufficiency of his challenged pleading. Were it otherwise, a pleading could always be saved from legal challenge simply by characterizing the claim therein presented as a valid legal claim.
To properly assess the legal sufficiency of a challenged count or pleading, the Court must therefore look beyond its caption to the allegations of the count or pleading itself. If the allegations in question describe and/or make provable facts tending to establish all the essential elements of a valid claim or cause of action, the case must be allowed to go forward on that claim or cause of action even if the pleader has mislabeled it.
Looking, then, to the substance of the plaintiffs' "tort" count, the Court discovers the following relevant allegations: (1) that in the month of April 1988, the defendant's predecessor entered into written agreements with the plaintiffs to perform CT Page 9958 certain auditing and accounting services for them; Complaint, Count II, ¶¶ 4-5; (2) that under these agreements, the defendant's predecessor was to audit the plaintiffs' financial statements at the end of each fiscal year, and on that basis to prepare and submit to the National Association of Securities Dealers, Inc. ("NASD") and the Securities and Exchange Commission ("SEC") certain financial statements, schedules and reports, in accordance with the applicable requirements of the NASD and the SEC; id., (3) that the defendant's predecessor, and later the defendant, performed the services called for by these agreements until August 2, 1990, when the defendant withdrew from its professional engagement effective immediately, withdrew its consent to use and rely on certain previously prepared reports concerning the plaintiffs' April 1990 financial statements, and reported its withdrawal of such consent to the SEC; id., ¶¶ 6-9; (4) that at the time of its withdrawal from engagement the defendant knew or should have known that the plaintiffs were depending upon it to perform the work it had agreed to perform in order to enable ShareAmerica, Inc. to proceed with its imminent public offering, that its withdrawal would in all probability adversely affect ShareAmerica, Inc.'s ability to engage another accounting firm to perform the work the defendant was withdrawing from, and that its withdrawal would taint the reputation and good will of the plaintiffs and their management for many years, cast doubt about the success of the plaintiffs' public offering, and cause delays in seeking future approval of its registration and public offering statement by regulatory authorities; id., ¶ 11; (5) that at the time of its withdrawal from engagement, the defendant knew or should have known that its withdrawal would disenable ShareAmerica, Inc. from proceeding with its planned public offering, and that this, in turn, would result in substantial losses to both plaintiffs; id., ¶ 12; and (6) that the defendant's withdrawal from engagement was a violation of the defendant's agreements with the plaintiffs and/or of the defendant's duty under those agreements to act in good faith and in accordance with AICPA Professional Standards. Id., ¶ 10. The plaintiffs contend that the facts described in and/or made provable under these allegations are legally sufficient, if proved at trial, to establish that the defendant's withdrawal from engagement constituted a tortious breach of the implied covenant of good faith and fair dealing arising under the parties' April 1988 agreements.
In Connecticut, it is well established that every contract carries with it an implied covenant of good faith and fair CT Page 9959 dealing, the bad-faith violation of which is actionable in tort.See. e.g., Buckman v. People Express, Inc., 205 Cairn. 166, 170,530 A.2d 596 (1987).
 The implied covenant of good faith and fair dealing requires faithfulness to an agreed common purpose and consistency with the justified expectation of the other party in the performance of every contract. Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 566, 479 A.2d 781 (1984). "Essentially, it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." Id., 567.
Southbridge Associates v. Garofalo, 53 Conn. App. 11, ___ A.2d ___ (1998). The central expectation of the parties to any contract is that "`neither [of them will] do anything that will injure the right of the other to receive the benefits of the agreement.'Habetz v. Condon, 224 Conn. 231, 238, 618 A.2d 501 (1992)." Gutpav. New Britain General Hospital, 239 Conn. 574, 687 A.2d 111
(1996).
Bad faith is most simply defined as the "absence of good faith." Buckman v. People Express, Inc., supra, 205 Conn. at 171. More than mere negligence, it involves a dishonest purpose and implies ""actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.' Black's Law Dictionary (5th Ed. 1979). FundingConsultants, Inc. v. Aetna Casualty Surety Co., 187 Conn. 637,644, 447 A.2d 1163 (1982); Hartford National Bank Trust Co. v.Credenza, 119 Conn. 368, 371, 177 A. 132 (1935)." Habetz V.Condon, supra, 224 Conn. at 237.
In light of the foregoing definitions, an action for breach of the covenant of good faith and fair dealing requires proof of three essential elements, which the plaintiff must duly plead: first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiffs right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiffs right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith. For the following reasons, the Court concludes that CT Page 9960 each such element is duly pleaded in this case.
Here the plaintiffs have clearly alleged that they and the defendant were parties to a contract under which the plaintiffs reasonably expected to receive certain benefits. Under its April 1988 written agreements with the plaintiffs, the defendant was to perform certain accounting and auditing services for the plaintiffs on an annual basis, and to prepare certain reports for submission to the NASD and the SEC on the basis of their annual audits. The plaintiffs' manifest purpose for procuring those services was to enable them, properly and profitably, to carry on their business in full compliance with all pertinent laws and regulations governing the securities industry. In the relevant time frame, their particular purpose, which was known to the defendant, was to do what was necessary to make possible a successful public offering of shares in the plaintiff limited partnership, which in turn depended on the defendant's timely preparation and submission to the SEC of certain financial statements, schedules and reports of which they approved, as the plaintiffs' independent auditors. In this case, then, the plaintiffs have adequately alleged that they had a reasonable expectation that the defendant would timely and properly perform the services required of it under the subject contracts without compromising its ability to gain the benefits it expected to obtain from such performance.
Here, moreover, by alleging that the defendant withdrew from its professional engagement shortly before the planned public offering was to have been made, and by so doing under circumstances known to have put the future of such an offering in great jeopardy, the plaintiffs have sufficiently alleged that the defendant engaged in conduct that injured their rights to receive benefits reasonably expected by them under their contracts.
As for the third and final element of the plaintiffs' claim — that the defendant acted in bad faith when it injured their right to receive certain benefits they reasonably expected to receive under the subject contracts — the plaintiffs have alleged, inter alia, that the defendant's withdrawal from its professional engagement "was a violation of the defendant's agreements with the plaintiffs and/or of the defendant's duty under those agreements to act in good faith." Complaint, Count II, ¶ 10. The "absence of good faith," to reiterate, is the most basic definition of bad faith. Buckman v. People Express, Inc.,supra, 205 Conn. at 171. By alleging that the defendant violated CT Page 9961 its duty under the subject agreements to act in good faith — an allegation which, though general and unilluminating, was never challenged for its clarity or legal sufficiency by a request to revise or a motion to strike — the plaintiffs committed themselves to proving that the defendant withdrew from its engagement in bad faith, that is: for some dishonest purpose implying "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Habetz v. Condon, supra, 224 Conn. at 237 (Citations omitted).
For the foregoing reasons, the defendant's motion for summary judgment as to the Second Count of the plaintiffs' complaint is hereby denied.
 III
The Fourth Count of the plaintiffs' complaint purports to allege that by withdrawing from its professional engagement on behalf of the plaintiffs in violation of the national standards of the accounting profession, the defendant committed an unfair or deceptive trade practice, in violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act ("CUTPA"). The defendant asserts that the plaintiffs' claim, so pleaded, is simply a claim of professional negligence or malpractice, which is not legally actionable under CUTPA.
In support of this part of its motion, the defendant relies principally upon the logic of two Connecticut Supreme Court cases which have held that CUTPA does not apply to claims of legal or medical malpractice. Haynes v. Yale-New Haven Hospital,243 Conn. 17, 35, 699 A.2d 964 (1997);. Beverly Hills Concepts, Inc. v.Schatz and Schatz, 247 Conn. 48 79 ___ A.2d ___ (1998). Though these cases expressly recognize that the practice of law or medicine constitutes the conduct of trade or commerce within the meaning of CUTPA, they conclude that the purely professional aspects of those specialized businesses must be distinguished from the entrepreneurial or commercial aspects thereof. While the latter cannot meaningfully be distinguished from those of any other business, and thus are reasonably subject to regulation and enforcement under a consumer protection statute like CUTPA, the former are closely regulated activities, performed by a limited number of highly trained professionals whose professional CT Page 9962 activity must be judged by the standards of the profession itself. These standards, the Supreme Court reasoned, are best and most appropriately enforced by existing governmental bodies, which closely regulate both professions, and by our civil courts in traditional professional negligence or malpractice actions, where any finding of liability must be based on a proven deviation from the prevailing standard of care in the relevant profession or specialty thereof.
Accounting, claim the defendants, is a closely regulated learned profession which, like law and medicine, should be controlled in all of its purely professional aspects by the governmental bodies charged with regulating it and by our civil courts in traditional malpractice actions, not by the special provisions of a consumer-protection statute like CUTPA. In so arguing, the defendant urges this Court to accept the analysis of Judge Aurigemma, who came to that very conclusion in Advest Groupv. Arthur Andersen LLP, CV 97 0571417, 1998 Conn. Super. LEXIS 2137 (July 28, 1998) (Aurigemma, J.).
This Court has carefully reviewed Judge Aurigernma's well reasoned decision in Advest Group and agrees with it completely. It is persuaded, in particular, that those features of the medical and legal professions that led the Supreme Court to exempt their purely professional activities from CUTPA in Hayues
and Beverly Hills Concepts are also features of the accounting profession, which should therefore be exempted from CUTPA as well. As Judge Aurigemma explained:
 It is logical to extend the reasoning in Haynes to accounting malpractice claims. Accounting, like law and medicine, is a learned profession that is not interchangeable with other commercial endeavors. Deviations from the standard of care applicable to accountants are not the type of actions the consumer protection provisions of CUTPA were designed to prevent. Case law concerning accounting malpractice, the regulations of the State Board of Accountancy, and the rules of the American Institute of Certified Public Accountants more appropriately address such deviations.
Like attorneys and health care providers, accountants are extensively regulated by a state agency other than the Department of Consumer Protection. See Connecticut General Statutes §§ 20-279b, et seq. The State Board of Accountancy (the "Board") regulates the conduct of public CT Page 9963 accountants in this state pursuant to the authority granted to it by § 20-280 of the Connecticut General Statutes. Specifically, the Board has the authority to conduct investigations into complaints about the conduct of accountants, § 20-280c, and to impose sanctions on accountants, including fines: revocation or suspensions of licenses: censures; or imposition of probation, for committing dishonesty, fraud or negligence in the practice of public accountancy and for other enumerated misconduct. § 20-281a.
 Based on the foregoing, the same limited exemption from CUTPA that applies to the practices of law and medicine should apply to the practice of accounting that is, only claims arising out of the commercial or entrepreneurial aspects of accounting should fall under CUTPA.
Advest Group v. Arthur Andersen LLP, supra.
In light of the foregoing analysis, which this Court accepts, the Court concludes that it must grant the defendant's motion for summary judgment as to the Fourth Count of the plaintiffs' complaint if the negligent acts or omissions therein alleged concern only the rendering of professional services, not the commercial or entrepreneurial aspects of its business. Indeed they do, for the challenged count is based entirely upon the defendant's alleged deviations from prevailing standards of care in and for the accounting profession by withdrawing, as it did, from its professional engagement on the plaintiffs' behalf. This is an aspect of accounting work that is governed by professional rules and standards for accountants, and thus is traditionally raisable in a malpractice action. Because professional negligence in the rendering of such professional services is exempt from CUTPA as a matter of law, the defendant is entitled to summary judgment on the Fourth Count of the plaintiffs' complaint.
 CONCLUSION
For all of the foregoing reasons, the Court hereby orders that summary judgment be entered for the defendant on the Fourth Count of the plaintiffs' complaint, but that the defendant's motion for summary judgment be denied as to the Second Count of that complaint.
Michael R. Sheldon, J. CT Page 9964